BROWN, P. J.
This is a taxpayers’ action, brought to obtain a judgment declaring illegal, and setting aside, a contract between the board of improvement of the town of New Utrecht, in Kings county, and the Kings County Gas & Illuminating Company. The contract bears date December 26, 1889; and, by its provisions, the-gas company agreed, during the term specified, to erect and maintain in said town, on land to be purchased or leased, a gas tank and all necessary appurtenances for the storage and supply of illuminating gas sufficient to supply the entire town, ana to lay all necessary mains and pipes, and connect them with street lamps to be erected by the board of improvement, and to furnish, at a, price named, a fixed and permanent illuminating gas, of a quality and at a pressure specified, sufficient to supply the consumption thereof throughout said town. The original contract was made for a term of ten years from the date of the commencement of the-delivery of gas (which date is agreed to have been September 2, 1891); and on March 19,1891, pursuant to the provisions of chapter 59, Laws 1891, it was extended for the further period of fifteen years. The original contract is assailed by the plaintiff on the ground of fraud and illegality; the extension contract, on the- *623 ground of illegality alone. The allegations in respect to fraud, were (1) that the contract did not follow the specifications which were adopted by the board of improvement, and upon which bids-were invited to furnish gas to the town, but that its provisions in material and substantial particulars departed'from the specifications, all of which changes and variations were favorable to the gas company, and burdensome to the taxpayers of the town ; (2) that lamps had been erected in places remote from any dwellings, and in the-unimproved and outlying sections of the town, where-they were useless and of no practical benefit to the inhabitants, and that the gas company was directed by the board of improvement and permitted to supply gas thereto, to enable it to obtain, money wrongfully from the town.
The determination of the questions raised by these allegations, with a single exception, rested wholly in the consideration of parol evidence. The testimony was conflicting, and it received from the-learned judge who heard the case at special term very careful examination. His conclusion was that the charges of fraud were not established, and we concur in that view of the case. The rule is-well settled that an appellate tribunal is not warranted in" reversing a judgment unless the findings of the trial court are against-the weight of evidence, and it clearly appears that the proofs predominated in favor of a contrary result. Aldridge v. Aldridge, 120 N. Y. 614; 31 St. Rep. 948; Barnard v. Gantz, 140 N. Y. 249; 55 St. Rep. 541. The decision of the special term has ample support in the testimony; and it is sufficient for us to say that, having carefully read the evidence, we concur in the result, there reached.
As first prepared, the specifications provided that gas furnished under the contract should be manufactured in the town. One of the questions seriously in dispute at the trial was whether this-provision was stricken from the specifications before the board advertised for bids. It appeared in the first, sixth, and twentieth clauses of the proposed contract, and the fact appears to be that-from the last-named clause it was not' stricken out. That provision of the contract related solely to the time when the contracting company should be ready to supply gas," and in terms provided that, at the date specified, it should be ready to “manufacture and deliver” gas. Assuming, as we must, that the changes had been made in the other provisions of the proposed contract before the-board advertised for bids, and that bidders were invited to supply gas to the town, and not to manufacture it within the town, the fact that the twentieth provision was permitted to stand as originally prepared was a mere error, which deceived no one, and is ■ wholly insufficient to. sustain a conclusion of a fraudulent act upon the part of the contracting parties. All persons understood that bids were invited to supply gas only; and, for so providing in the contract, neither the board of improvement nor the gas-company should be subjected to any adverse criticism.
- In considering the questions of illegality raised by the appellant, reference is necessary to the statutes creating the board of improvement of the town, and defining its powers. The said *624 board was established by chapter 576, Laws 1888, and was authorized to contract with' any gas company to supply gas for lighting any street or streets, or parts thereof, in said town, for a period not exceeding twenty years, upon such terms and conditions as the said board should deem expedient. Section 9, as amended by chapter 361, Laws 1889. It was empowered to establish gas districts in the town, and to erect posts, lamps, and fixtures, and to do all work incidental to lighting the streets. The expense thereof was, in the first instance, to be paid from the proceeds of town bonds authorized to be executed by the supervisor upon the direction of said board, but was finally to be levied upon and ■collected from the property in the gas districts established by the board; and the cost of the gas supplied was to be levied upon and ■collected from the property in ■ the school districts of the town. The provision for apportioning the cost of gas upon the school districts of the town was contained in section 12 of the act of 1888. By chapter 59, Laws 1891, this system of raising money to pay the cost of the gas supplied was changed, and the expense thereof, together with the amount necessary to pay principal and interest of bonds issued to pay for lamps, posts, etc., was thereafter to be included in, and made a part of, the annual taxes to be levied in the town, and was directed to be certified to the board of supervisors by the board of improvement, and levied and collected in the town in the same manner as other town expenses. Under this system, section 12 of the original act became superfluous, and it was Repealed, and in its place was enacted the following:
“ Sec. 12. Nothing herein contained shall be construed so as to impair the forcé of any contract heretofore made by or with said board for lighting the streets of said town, and establishing the maximum limit’ of price to be charged to private or individual consumers of gas; but the same is hereby in all respects confirmed, and may be extended upon the like terms and conditions for such further period, not exceeding fifteen years, as in the judgment of said board may be deemed most expedient and for the best interests of the town.” j
It is the the respondents’ contention that any illegality "existing in the original contract was cured by ratification of the legislature expressed in this section of the law. It would seem that the main purpose of this amendment was to conform the contract to the new system of payment imposed upon the town. But, from its plain terms, we must assume that it was also the intent of the legislature to ratify the contract, and make valid any illegality existing therein. So considered, we are of the opinion that the act of 1891 is-in conflict with section 16 of article 3 of the constitution, which provides that “ no private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in its title." The act was a local one, and clearly embraced two subjects,—one relating to the board of improvement and the powers thereof, and the other relating to a contract theretofore made by the board. The ratification of a contract which was illegal, because it was not within the power of the board, was a subject entirely separate from the creation of the *625 board as a public body, and the delegation to it of certain powers and duties. The statute, however, is not wholly void because it embraces two subjects, but it can be sustained only as to that sub-, jeot which is expressed in its title. People v. Board of Supervisors of Chautauqua Co., 43 N. Y. 10. By its title it is an act to amend chapter 576, Laws 1888; and its application, therefore, must be limited to the powers and duties of the board of improvement, and such other matters as are incidental to the exercise of those powers. So far as it purports to ratify the original contract, it is void.. The board of improvement, therefore, possessed the power to extend the contracts, and the criticism made by the appellant upon the extension thereof is not well founded. Whatever may be said as to the meeting of the board at which the extension of the contract was authorized, and which was held during the absence of Mr. Nostrand from the state, and the omission $o give him notice thereof, these facts do not affect the legality of the board’s action.
We come, therefore, to the questions, raised by the appellant, as to the illegality of the provisions of the original contract. Such illegality is claimed to exist (1) in the provision that the gas company shall be reimbursed by the town for any expenses incurred in making changes in the gas mains, pipes, or lamp-posts rendered ■necessary by changes in the grade of streets after the gas company had entered upon the performance of the contract; (2) in the provision that no other gas or electric light company shall have the consent of the board of improvement to extend its mains or lay its pipes or conductors within said town during the term of the agreement.
We fail to perceive wherein the first provision is illegal. The board of improvement was authorized to make the contract upon such terms and conditions as it should deem expedient. The term “ street ” was defined by the law to include each and every public highway of the town, and each and every street and avenue laid down on the map of the town survey commission, which had been opened to the use of the public. It was apparent that the company might bé required to lay its mains and pipes in the ■streets the permanent grade of which had not been established; and the question as to which party should bear the expense of making changes in the pipes, which should be made necessary by changes in the grade of the streets, was a proper and legitimate subject of negotiation and contract. If was, we think, a matter upon which the board- of improvement was authorized to exercise its judgment, and with its determination the court cannot interfere!
With respect, however, to the provision that the board of improvement would not give its consent to any other gas or electric company to lay its pipes or conductors in the streets of the town, we entertain a different opinion. The original act provides that the term “ gas” is to be construed as applying to light produced by electricity as well asgas, and that any gas company shall have power to extend its mains or lay its pipes or conductors through *626 any of the highways of the town with the written consent of the.* board of improvement, and under such reasonable regulations as. it should prescribe. The supervisor of the town was ex officio & member of the board, and the other members were to hold office for four years, and provision was made for the appointment of their successors. The board, therefore, became a permanent pub-lie body, and possessed important public functions, which its; members were bound to exercise whenever the occasion required,, with due regard to the public interests, and for the benefit of the-taxpayers of the town. It is too plain to require argument that, the members of the board could not enter into a contract not to-perform any of the duties which the law devolved upon them, nor could the board, as it existed in 1889, do any act that would deprive another board from exercising any of the powers delegated to it by the statute. Any attempt to curtail or deprive themselves or any of their successors of the right or power to-perform their public functions would be against public policy, and void. This provision of the contract was a plain attempt on the part of the board to confer upon the gas company a monopoly, not only of the street lighting, but of supplying the residents of the town with light. Over the lighting of the streets the board had some control; over the lighting of public and private buildings it had none.
Under the general laws as they existed at the time this contract was made, and as they exist now, any gas or electric company incorporated under the laws of this state may, with the consent of the municipal authorities, lay its conductors in the streets and highways of the city, village, or town whére it is located; and such corporations are required, upon the the conditions stated in the statute, to su-pply light to the owners of any buildings or premises within 100 feet of their conductors. Laws 1848, c. 37, § 18; Laws; 1859, c. 311; Laws 1892, c. 40, §§ 61-65. It was not the purpose-of section 13 of the act of 1888, which established the board of improvement, to alter the general policy of the law which permitted gas companies to lay their pipes in the public streets. The-only effect of that provision was to require such companies in the town of New Utrecht to obtain the consent of the board of improvement, in addition to that of the municipal authorities of the town. Whenever an application was made, the board was bound to exercise its powers to grant the consent under “reasonable regulation.” Any gas company was entitled to locate in the town of* New Utrecht, and supply the inhabitants thereof with gas and electricity; and the board would be bound to permit them to lay pipes in the streets under reasonable regulations. Such powers-as are granted by sections 13 of the act are conferred on public officers for the public benefit, and are not to be exercised arbitrarily or for the benefit of individuals, or to create monopolies. It is true that the provision of the contract does not immediately cause any waste of the fund's of the town or of the taxpayer. Bub the authorities all hold that the terms “ waste ” and “ injury,” as; used in the statutes and Code, comprehend illegal official .-acts,, Talcott v. City of Buffalo, 125 N.Y. 280; 34 St. Rep. 871; Zeigler *627 v. Chapin, 126 N. Y. 342; 37 St. Rep. 490; Peck v. Belknap, 130 N. Y. 394; 42 St. Rep. 384, and. we are of the opinion that those terms include acts which tend indirectly to injure the taxpayers, as well as those the direct effect of which is to cause' a loss or waste of public property.
That this provision of "the contract was a menace to the inhabítants of the town is beyond question. Its tendency was to destroy competition, and create a monopoly, not only of street lighting, but also of supplying light to public and private buildings. If, therefore, the question presented rested solely upon the contract and the statutes ~ relating to the board of improvement and its powers, which 1 have referred to, we should feel constrained to hold that the provision of the coritract under discussion was one beyond the power of the board to enter into. But we are of the' opinion that by the law annexing the town-of New Utrecht to the city of Brooklyn, enacted since the commencement of this action (chapter 451, Laws 1894), the said provision has been annulled, and that any affirmative action by the court in relation thereto is unnecessary. By the sixth section of the act referred to, the board of improvement was abolished ; -;and, by the first section thereof, the territory comprised within the limits of the town of New Utrecht was annexed to and merged in the city of Brooklyn; and it was enacted that thereafter such territory should be governed by the same laws, and should be entitled to the same rights, privileges, franchises, and immunites, as the said city of Brooklyn. This act took effect July 1, 1894. By Laws of 1892, c. 40, § 61, any gas or electric company has authority to lays its pipes or mains in the streets of the city where it is located, with the consent of the municipal authorities thereof It will be observed that the provision of the contract under discussion-does not, in terms, grant, or attempt .to grant, to the gas company, the exclusive right to lay its pipes in the streets. The company acquired no apparent right or franchise thereby. The board agreed merely not to grant its consent to any other company to extend its mains or lay its pipes in the streets. This ‘ provision is in the nature of a covenant on the part of the board of improvement not to exercise the power delegated to it by the state. Such covenant or agreement could have no force or efficacy except during the existence of the board of improvement. When the official life of the board terminated, the agreement was at an end. The act referred to has not only abolished the board of improvement, but, by its provisions, the territory within which lay the streets referred to "in the agreement has come under the operation of new laws, and the control of the streets is now vested in the municipal officer of the city. The power and authority of -the officials of the city are not in any way limited by the contract in question, and the provision under discussion, even assuming that it once had apparent vitality, is now of no force or effect whatever. It would be idle, therefore, for the court to adjudge it to be void. \No other question requires notice.
The judgment should be affirmed, without costs.
HACTH, J.s concurs. "
*628 New York State Reporter, Vol. 73. [Sup, Ct,
PRATT, J.
This suit was brought by the plaintiff, a taxpayer in the former town of New Utrecht, in Kings county, under section 1925 of the Code of Civil Procedure, against certain town officials constituting a board of improvement, as well as against the town and a gas company; the relief sought being the cancellation of a contract.' made with the corporation for the lighting of the town with gas. The contract was dated December 28, 1889, and an extension thereof was dated March, 1891. It was an executed contract, in so far as the defendant gas company was concerned, before this suit was brought. The corporation began the work of laying gas mains, and the erection of a plant and the illumination of the town commenced September 2, 1891. Various extensions of the mains were ordered by the town officials on petition of property owners and citizens, the company expending a large sum of money (over §600,000) in the work before the plaintiff brought this action, which was commenced in May, 1893. The plaintiff attacks this contract on the ground of alleged fraudulent connivance between, the town officials and the corporation in the making of the agreement, and, secondly, because of alleged want of power on the part of the officials to make the contract. The allegations of the latter clause of complaint is somewhat general, the language used charging that the contract is' “ illegal and void”; and plaintiff, on being called on for a bill of particulars, stated his contention in this respect in detail, the bill of particulars being made a part of the case on appeal. The question of the constitutionality of the laws under which the original contract and the extension contract were made is not raised in the complaint or in the bill of particulars, nor does it appear to have been pressed upon the trial court. In addition to the specifications of fraud, waste, want of power, and illegality, .the plaintiff now urges on the appellate court the question of the constitutionality of the legislation involved in making of the agreements.
So far as the charge of fraud or connivance between the officials and the corporation is concerned, such charges always present an issue of fact to be determined on the evidence adduced by the parties to the litigation. The claim that this cdntract was tainted with corruption or fraud was one of the essential points in plaintiff’s case, and the burden lay upon him to prove illegal, wrongful or dishonest official acts on the part of these officials, Talcott v. City of Buffalo, 125 N. Y. 280; 34 St. Rep. 871; and his proof in this respect is, at least, required to be as full and complete as in the case of any other proposition of fact proposed for decision by the court: Kountze v. Kennedy, 147 N. Y. 124; 69 St. Rep. 388. The learned judge who tried this case, and whose opinion is inserted at length in the judgment appealed.from, gave the evidence for and against this alleged fraud and deceit careful and exhaustive consideration, and decided the issue against the plaintiff. It would be enough for this appellate court to ascertain simply whether this finding was supported by evidence, in which ease the decision of the trial court is uniformly upheld. Baird v. Mayor, etc., of New York, 96 N. Y. 567; Lowery v. Erskine, 113 N. Y. 55; 21 St. Rep. 917. But if we go further, and examine *629 the testimony contained in this record, we must he convinced that the plaintiff failed to make out a case of dishonesty or corruption against these public officials. That certain of the plaintiff’s associates were not in sympathy with this town board is.manifest. Their difference of opinion on many subjects is apparent from the evidence; but, on the issue as to good faith in dealing with this gas company, the most that can be said of the evidence of plaintiff’s witnesses is that they were, undoubtedly, suspicious of everything these officials did, and have allowed their suspicions to govern their cooler judgment, because, even on the showing of plaintiff’s witness McKay, who in effect, was the only witness who asserted positively the improper action on the part of the board, the facts testified to are entirely reconcilable with honesty of intention, and at the most, raise a doubt which is entirely overcome by diréct and positive testimony on the part of the defense. One of the plaintiff’s witnesses, E. EL Sherwood, who was called to support the contention that changes or alterations were made in the specifications, not only failed to maintain the plaintiff’s claim, but his evidence made strongly for the bona fides of the action taken by the town board. The claim relative to th.e number of lamps is met by proof that the additional lamps ordered were in each case on petition of the property owners, and plaintiff’s chief witness, ETostrand, who was stated to be one of the leading property owners in th'e town, and opposed to the board of improvement, admitted on the stand.that he voted for every increase, and had no complaint to make as to the number of lamps. In fact, no property owner in the town was produced who criticised the number of.the lamps. We are bound by the record, and it is apparent that not only is there abundant evidence in the case to sustain the court’s finding, but the weight of the testimony as to honesty and good faith was entirely with the defendants. The proofs failed to justify the charges of fraud and favoritism set forth in the complaint, and, in fact the allegations of excessive charges for lights, set forth with great positiveness in the pleading, were withdrawn upon the trial. There is therefore no ground for reversing the finding of the special term on the issué of fact as to the bona fides of the contracts in suit, and the remaining inquiry must be directed to the alleged want of power in the board to act in the matter.
The plaintiff’s claims as to the illegality of their agreements are set forth in his complaint. It is charged that the original contract “was and is beyond the power of the said board, and was and is illegal and void.” This is followed by a statement of specific allegations of misconduct on the part of the board of improvement in, dealing with the defendant gas company.. The plaintiff then states his objections to the second or extension contract; pind it is definitely set forth that the board “had no power to make the said last-mentioned contract, and the same was made by them in violation of law, and that their act in making the same was and is illegal, and was also intended by the said officials to continue the fraud illegality, wastefulness, and inequitableness of the said first contract; that, as the plaintiff is informed and be *630 lieves, it was the duty of the said board and of the members thereof not to make the said second contract until at or about the expiration of the said first contract, in the year 1901; that they made the same in disregard of their duty to wait until the end of the formér contract, and thus get the advantage for the town of all competition, and of lower rates that would accrue in the meantime, and solely for the purpose of favoring the said company at the expense of the town,” etc. 'The plaintiff, in addition to this statement of his claim, which, it will be noticed, in no way raised any question of constitutionality of the laws organizing the board but averred the existence of the board under the acts of the legislature, and averred its duty to be to wait until 1901, and then to extend the contract, served a bill of particulars, as required by Code Civil Procedure (section 531), in which he assumed' to state with greater clearness and definiteness his claims of illegality. And it will be perceived that neither in his complaint nor in the additional bill of particulars is there any intimation that the law is not in effect and .binding., Passing to the judgment, the opinion of the court is incorporated at length in the decree, and forms a part thereof; stating the ground upon which the issues have been decided; and it is again apparent that the plaintiffs contention on his pleadings and, proofs at the trial in no way attacked the constitutionality of the various laws creating the board of improvement, or the power of the legislature to pass the acts in question, but, on the contrary, reiterated his views of the duty of' the town officers under the acts in question. The question of constitutionality was apparently not presented to the court, because it is not referred to in the lengthy opinion delivered at the special term, nor in the points submitted on behalf of the respondents on the arguments before this court. In short, it nowhere appears that the attention of the court below was called to the point, or that it was asked to rule on the question, or upon any point-which, by the most liberal construction, can be held to embrace it. The decision of the court is contained in the judgment appealed from, and there is no decision on this point before this court for review, and reviewing decisions of the courts below is the sole and exclusive duty of this court. Delaney v. Brett, 51 N. Y. 78; Vose v. Cockcroft, 44 N. Y. 415. That the court was desirous of passing on all possible questions fairly raised by the pleadings and proofs is evidenced by the reference to the constitutionality of the defendant’s contention that these contracts had been ratified by act of the legislature. But at no place in the record of the trial in the motions there made, in the pleadings, and apparently in the arguments addressed to the court, and recited in the judgment, was it claimed that those acts were not valid and binding. On the contrary, they were alleged as existing law ; the ‘ duties of the officials and of the company under these acts were pointed out by the plaintiff; and their alleged failure to comply with these obligations was urged as ground for annulling the contract. Cases must be considered on review on the theory on which they were tried. Emmons v. Wheeler, 3 Hun, 545.
*631 While we adhere to the rule above'laid down, the questions of law involved in considering the contract in suit are clearly settled, .and the interests affected by the decision of this appeal are large. It is well owing to the quasi public functions of the defendant corporation that its rights and obligations should be definitely determined ; and, as consideration of all the points urged by the .appellant leads us to affirm the judgment appealed from, we have stated our views on all these matters, as well as those properly before the appellate court.
The greater part of the brief submitted by the learned counsel :for the appellant is devoted to a discussion of the facts on which the plaintiff based his charge of fraud; and as to this charge we have -determined that the decision of the court below should not be disturbed. He alleges, however, as specifications of illegality, a -clause in the" original contract by which the defendant board •covenanted that it would not grant similar rights to other gas -companies; and he claims that this clause created a monopoly, or was a grant of an exclusive privilege, and beyond the power of the board of improvement. There must be grave doubt whether this board, acting pursuant to statute, having made a contract with this defendant company to do certain acts, possessed any power to grant further consent to any other company to do the same thing (Mayor, etc., of New York v. Second Avenue R. Co., 32 N.Y. 261; Dartmouth College v. Woodward, 4 Wheat. 658); but in no way •did this provision of itself curtail the rights of the town officers ■other than this board in the premises, if they had lawful right to grant to other companies. So that the particular clause referred to, in itself, created no exclusive franchise. If it was beyond the power of the board, it was void, and did not bind any one; and, ■as stated by the learned trial judge, as the expenditure of no money is involved in any rights therein assumed to be given, the plaintiff needed no decree to protect him.
The plaintiff calls attention to a clause charging the town with the cost of changing the pipes wherever there should be a change of street grades. The case is barren of any evidence showing the effect of this provision, or whether it imposed any additional burden on the town, or was a source of damage to the taxpayers. It is not referred to in the decision. This board of improvement, as •appears from the evidence, directed •‘the gas company to lay mains in various localities. The provision referred to is, in effect, that, if the authorities thereafter change the grade of the streets in which the pipes have been laid, the expense of lowering or raising-the pipe to accommodate the changed situation should be borne by the town. There is nothing in the reading of this provision that makes it unconstitutional or improper. There is no evidence from which the court can find that it imposes any obligations on the town, or the amount thereof. The act of the legislature establishing this board of improvement provides:
“ The said board shall be empowered to contract with any gas -company to supply gas for lighting any street ór streets or parts thereof in said town, * * *. to such extent, for such periods, mot exceeding twenty years, and upon such terras and conditions, *632 as they may deem expedient.” Laws 1888, c. 576, § 9, as amended by Laws 1889, c. 361.
We think that the provision referred to was a detail which was confided to the judgment of the board. It was proper that some provision should be made as a part of the general plan for lighting the town, and the exercise of that discretion by the board-should not be interfered with by the court in the absence of proof of fraud ; certainly not in a case where there is no proof of resulting damage to the town, Talcott v. City of Buffalo, supra.
The extension contract of March, 1891, is attacked as illegal,, unauthorized, and void. As above suggested, the plaintiff specified his objection to this contract by stating that it was the duty of this board to have delayed the extension of the contract until the year 1901, when the original contract by its terms expired - and it is to this argument that the appellant’s brief is directed, with the additional suggestion that the authority to extend is unconstitutional and void,—a point which, as we have stated, was not raised on the trial. A brief reference to the conditions prevailing with reference to the legislation and to these contracts is-important in determining the question here presented.
By chapter 576, Laws 1888, entitled “An act establishing a board of improvement, and defining its powers and duties, and to-provide for lighting the streets and other places in the town of Hew Utrecht, in the county of Kings,” it was enacted that there should be established in the town a board of five citizens, to be-known as a “ board of improvement; ” and by section 9 it was-provided (as amended by Laws 1889, chap. 361):
“ The said board shall be empowered to contract with any gas* company to supply gas for lighting any street or streets or parts-thereof in said town, * * * to such extent, for such periods, not exceeding twenty years, and upon such terms and conditions, as they may deem expedient.”
The object of the enactment is, as stated in the title and in the-section of the bill quoted, to supply light to the town. The legislature authorized a contract limiting the term to twenty years. The right of the legislature to prescribe the term of a contract authorized is fundamental. Similar provisions are found in nearly" every act providing for public improvements. The board of improvement, in December, 1889, made a contract with the defend.ant gas company, but limited it to ten years,—one-half the period which they were authorized to grant. It appears that the defendant company commenced the work of laying mains in the spring' of 1890, but the dernand for gas from property owners throughout, the town became so general that large extensions of the system were ordered. It became necessary, as disclosed by the testimony, to lay ninety-three miles of gas mains, to expend upward of. $600,000. The original capital of the defendant company was-but $100,000, as appears by the evidence introduced by plaintiff. This was- the situation in the spring of 1891, the defendant corporation, at that precarious 'period, being obliged to supply the demand for lighting facilities far beyond its original contemplation* In this contingency, and, as we are bound to assume, with know! *633 edge of all the facts, the legislature passed chapter 59 of the Laws of 1891, entitled “ An act to amend an act entitled ‘ An act establishing a board of improvement, and defining its powers and duties, and to provide for lighting the streets and other places in the town of New Utrecht, in the county of Kings;’ ” and by section 12 of. the Laws of 1891 it was provided:
“ Nothing herein contained shall be construed so as to impair the' force of any contract heretofore made by or with said board for lightiiig the streets of said town, and establishing the maximum limit of price to be charged to' private and individual consumers-of gas, but' the same is hereby in all respects confirmed, and may be extended upon the like terms and conditions for such further-period, not exceeding fifteen years, as in the judgment of said board may be deemed most expedient and for the best interests of the town.”
The board met, and, in pursuance of the authority granted to-them, extended the term of the contract, on like terms and conditions, for a period of fifteen years." The aggregate term of the contract is therefore twenty-five years, instead of twenty, as prescribed in the original act.
It is alleged that, notwithstanding this enactment: the board had no power to make the extension contract, that the same was-made in violation of law;- and, when called on to particularize, plaintiff charges in his bill of ‘particulars that it was the duty of the board not to make the extension contract until at or about the-expiration of the first contract, in the year 1901. It is found in the judgment that, inasmuch as the plaintiff does not assail this-extension contract on the ground of any fraud, but purely on' the-ground of illegality, this claim is not well founded. On the trial, the president of the defendant corporation being interrogated as to-his knowledge of the law authorizing the extension, the plaintiff’s-counsel interrupted the examination, stating, “ There is nothing on the question of extension which I propose to raise except ques-' tions of law ; ” and the two questions of law are distinctly stated in. the decision contained in the judgment now here in review:
Nostrand, ■ one of the board was absent on a fishing trip in Florida or Cuba, at the date of the meeting, and the extension was-ordered by a vote of four of the five members. The legislature-especially provided in the original act of 1888 (Laws 1888, chap. 576, § 7>:
“ Three of the members of said board shall constitute a quorum, and the affirmative votes of a majority of the entire board shall be necessary to transact the business of said board at a regular meeting, or. a special meeting, and all the members shall be duly notified to attend. In making or awarding any contract, or in expending or providing for the expenditure of any moneys, the affirmative vote of a majority of the entire board shall be necessary.”
The witness Keegan, a member of the board, and who attended to notification of members, testified that, a meeting having been called to- decide about the extension, he called up the office of Nostrand, on the telephone; that he had no knowledge of Nos- *634 brand’s absence, and then learned that he had gone down South. We concur with the decision of the learned trial judge that, under the circumstances, the legal requirements were complied with, and that this municipal board was not bound to await the return o£ one of its members from a pleasure trip before transacting the business which might come before it.
Nor is the contention of the appellant sustained that the board was under legal, obligations to wait until 190L to carry out the legislative intent, or that it was necessary to readvertise. Plaintiff -failed to show any impropriety in the charge for gas mentioned in the contract, withdrawing on the trial the serious charges made in -the complaint in that regard. The legislature having said that this identical contract might be extended on the same terms and •conditions, what lawful criticism can there be on the legality of the action of the board ? We cannot as an appellate court, criticise the authority of the legislature to so direct. If they had the power to prescribe the terms of tha first contract, they had the right to extend that term. The”plaintiff cannot come before the -court in the anomalous position of insisting that the legislature might authorize a contract for twenty years, but not for twenty-five. The argument is without force; and the legislative power being1 granted, it is absurd to say that this board was required to postpone its action for ten years. It is provided that chapter 59, Laws 1891, shall take effect immediately.- As was said in People v. Butler, 147 N. Y. 164; 69 St. Rep. 410, where a somewhat similar argument was urged on the court, “ no ingenuity can suggest a reasonable explanation for such an extraordinary intention on the •part of the legislature. We cannot attribute any such intention to that body.” These objections to the extension contract must fail.
The appellant raises, apparently for the first time, a question of the constitutionality of chapter 59 of the Laws of 1891, in so far .as it authorizes the extension of this contract. The original term provided for in the act being twenty years (of- which the board of improvement specified but ten in the contract), it is claimed that ••this is a local act, and that its title does not sufficiently indicate the subject matter. The case of Rogers v. Railway Co., 30 Supp. 655, is cited in support of this argument. The provisions of the law criticised by the special term in the case cited are so essentially different from the law here under consideration that it should not be necessary to distinguish between them. In that case the •court held that the amendatory act passed in 1894 sought to ratify and confirm the proceedings of a railroad company that had succeeded to the corporation organized under the act of 1863, so as to confirm a right to build a railroad in one of the streets of the ■city several 'miles distant from the original place where one was authorized to be constructed. The court said that no one, in reading the title of the act, would have the slightest idea that it .authorized the transaction mentioned in the body thereof. ■
Any contention that the legislation authorizing the contract or extension is unconstitutional if at all justifiable should be directed against the original act of 1888, and not against either of the *635 .•amendments. Such a contention cannot be seriously maintained. The original'act (chapter 576, Laws 1888) is entitled “An act establishing a board of improvement, and defining its powers and ■duties, and to providing for lighting the streets and other places In the town of New Utrecht, in the county of Kings.” This title •should be read in close relation with the language of the constitution, which is that no local bill “ shall embrace more than one subject, and that subject shall be expressed in the title.” Const,, aft. 3, § 16. It must be observed that it is the bill which shall mot embrace more than one subject; and if the bill embraces but one subject, and if that subject is expressed in the title, the lan;guage and intent of the constitution are satisfied. Whenever, therefore, a bill is attacked as in contravention of the provisions ■of this section, the first duty imposed upon the court is that of •examining the bill itself. The act (chapter 576, Laws 1888) can-mot be said to embrace more than one subject. That subject is the lighting of the streets and other places in the town of New Utrecht. All the provisions of the act, including the establishment of a board of improvement, relate to that subject. The powers and duties of the board relate to that subject. Every section of the act relates to that subject. Among other sections, section 9 empowers the board “to contract with any gas company to supply gas.” The terms are to be as they may deem expedient, except that the period must not exceed ten years. The act of 1888 was amended by chapter 361 of the Laws of 1989. This act is entitled “An act to amend chapter five hundred and seventy-six ■of the Laws of one thousand eight hundred and eighty-eight, entitled ‘An act establishing a board of improvement, and defining its powers and duties, and to provide for lighting the streets and other places in the town of New Utrecht, in the county of Kings.’ ” An examination of this act discloses but one subject, and that subject is the lighting of the town.
We now come to chapter 59 of the Laws of 1891. This act is entitled “An act,to amend chapter five hundred and seventy-six of the Laws of .eighteen hundred and eighty-eight, entitled ‘An act establishing a board of improvement, and defining its powers and duties, and to provide for lighting the streets and other places in the town of New Utrecht, in the county of Kings,’ as amended by chapter three hundred and sixty-one of the Laws of eighteen hundred and eighty-nine.” Special effort has been made to sustain the proposition that this act, because it authorizes an extension ■óf the contract made under the previous acts, embraces'more than one subject. This reasoning cannot be accepted. The subject of this act, as of the acts of 1888 and of 1889, is the lighting of the town. The previous act had authorized a contract. This act takes note of the fact that such a contract had been made. It confirms that contract, and it authorizes the board of improvement to extend it, giving the board the same discretion as to terms and conditions, which it had possessed and exercised in making the original contract. No subject is embraced in this law of 1891 which is not embraced in both of its predecessors. All three of the acts *636 deal with the one subject,—that of lighting the town,—and in-each instance this subject is expressed in the title.
Judge Peclcham, writing the opinion of the court of appeals in People ex rel. Carter v. Rice, 135 N. Y. 483; 47 St. Rep. 702, said:
“Before courts will deem, it their duty to declare an act of legislature void as in violation of some provision of the constitution, a case must be presented in which there can be no rational doubt. Any incompatibility of the legislative enactment with the constitution must be manifest and unequivocal. Judge Denio, in People v. Draper, 15 N. Y. 546, expressed the rule in substantially the above language. " There is no doubt of its correctness, and I have heard no counsel who has challenged it. * * * Every intendment is in favor of the constitutionality of laws passed by the legislature, and courts will not adopt a doubtful construction for the purpose of invalidating them: A clear and substantial inconsistency must be found to justify their condemnation. Kerrigan v. Force, 66 N. Y. 381.”
The position thus far set forth is supported by abundant authority, some of quite recent date. In the case of People v. Board of Sup’rs of Westchester Co., 147 N. Y. 1; 60 St. Rep. 343, the court of appeals reaffirms with emphasis the important and established doctrine that:
“A statute can be declared unconstitutional only when it can be shown beyond reasonable doubt that it conflicts with the fundamental law; and until every reasonable-mode of reconciliation-of the statute with the constitution has been resorted to, and. reconciliation has been found impossible, the statute will be up- • held.”
Again, in Demarest v. City of New York, 147 N. Y. 203; 69 St. Rep. 550, the court of appeals holds that the constitutionality of an act of the legislature need not be passed upon by the courts until a case arises in which a decision of such question is unavoidable for the determination of the case itself, "i
Again, in the case of People v. Fitch, 147 N. Y. 355; 69 St. Rep. 706, the court holds that the act (chapter 537, Laws 1893) entitled “An act providing for ascertaining and paying the amount of damages to lands and buildings suffered by reason of changes of grade of streets or avenues, made pursuant to chapter 721 of the Laws of 1887, providing for the depression of railroad tracks in the 23rd and 24th wards in the city of New York or otherwise,” is not in contravention of the provisions of article 3, - section 16, of the constitution, in force at its passage, that no local, bill shall embrace more than one subject, and that shall be embraced in the title.
We do not deem it necessary, in our view of the case, to pass upon the legal effect of the clause in the act of 1891 ratifying and affirming the contracts made by the board. • The opinion delivered at special term covers all the charges asserted by the plaintiff in this action, and disposes of them clearly and satisfactorily. In view of the interests involved, we have thought it proper to give more extended examination to this case. Our views here *637 expressed lead to an affirmance of the judgment appealed from,' with costs.