### NELSON v. CITY OF MURFREESBORO et al.

(Circuit Court, M. D. Tennessee. March 13, 1909.)

1. COURTS (§ 282*)—FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION.

A municipal ordinance legislative in character, in the exercise of delegated authority to make laws which the Legislature might have made, has the force of a state law within the contract clause of the Constitution, and, where such ordinance impairs the obligation of a prior contract made by the city, a suit to enjoin its enforcement involves a question arising under the Constitution of the United States, of which the federal courts have jurisdiction, where the requisite amount is involved, without regard to the citizenship of the parties.

Ed. Note.—For other cases, see Courts, Cent. Dig. § 821; Dec. Dig. § 282.*

Jurisdiction of cases involving federal question, see notes to Bailey v. Mosher, 11 C. C. A. 308; Montana Ore-Purch Co. v. Boston & M. C. C. & S. Min. Co., 35 C. C. A. 7.]

2. MUNICIPAL CORPORATIONS (§ 682*)—POWERS—LIGHTING CONTRACTS.

Murfreesboro City Charter, § 8, subsec. 6 (Laws Tenn. 1903, c. 120), gives the city council authority to license, tax, and regulate all businesses and corporations lawful to be carried on within the city. Subsection 11 gives the city complete control over the city streets, and subsection 13 gives power to provide for the erection of lamp posts, lamps, electric fixtures, and lamps for the lighting thereof, for strictly municipal purposes. Section 12 provides that no order or ordinance shall be made involving the expenditure of money or the contraction of a debt against the corporation unless money shall be actually in the city treasury to pay such debt or expenditure, or the same shall be within the amount of the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

current year's taxes for such purposes. Section 12 was amended by Laws 1905, c. 41, declaring that the provisions of section 12 should not apply to contracts made by the city council for the furnishing of lights for the city streets, and that the council should have power to make all necessary and proper contracts with any individual or corporation for the lighting of the streets for any period not longer than 10 years, and to make appropriations annually for such purposes. *Held*, that the amendment was not intended to enlarge the power of the city council so as to permit it to give a franchise generally in the city streets in reference to any matter distinct from that of street lighting, but that its primary purpose was to do away with the original limitation upon the council's power so as to permit it to make such contracts for 10 years and appropriate money therefor, and the section does not confer the power to incorporate in such contract, under the guise of an additional consideration to the contractor, an exclusive franchise permitting the furnishing of electricity to the inhabitants of the city for lighting, heating, and power during the term of the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1468; Dec. Dig. § 682.*]

**3. MUNICIPAL CORPORATIONS (§ 682*)—IMPLIED POWERS—EXCLUSIVE PRIVILEGES IN STREETS.**

A municipal corporation has no general implied power to grant exclusive privileges in the streets, such power not existing unless given by the Legislature in express language or necessarily implied from other powers, and, if inferred from other powers, it is not enough that the authority be convenient to them, but it must be indispensable.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1468; Dec. Dig. § 682.*]

Bill by John H. Nelson against the City of Murfreesboro and others. Bill dismissed.

This case was heard upon demurrers to the complainant's bill, and on the complainant's application for preliminary writ of injunction.

The bill, which was filed by John H. Nelson, a resident and citizen of Rutherford county, Tenn., doing business under the name of the City Gas & Electric Light Company, against the city of Murfreesboro, a municipal corporation located in Rutherford county, Tenn., and John A. Davis and David F. Elam, residents and citizens of said county, alleged: That the city of Murfreesboro on June 16, 1905, enacted an ordinance granting to the complainant, under the name of said company, a franchise or right to establish and maintain a plant for the manufacture of gas and electricity and poles, wires, and pipes for the transmission thereof in, through, and along the streets, alleys, and sidewalks of the city for the purpose of supplying and furnishing the city and its inhabitants with light, heat, and power; this ordinance providing that in order to be binding it should be accepted by the company and a contract entered into pursuant thereto between the city and the company whereby the city should be furnished electric light at specified prices for not less than 10 years, for the use and lighting of the city, and the eleventh section of the ordinance specifically providing as follows: "It is hereby agreed, intended and understood that a perpetual gas and electric light franchise, with a ten-year exclusive feature, expiring with the contract, is hereby granted to said City Gas & Electric Light Company in consideration of the contract to be entered into for street lights, and in further consideration that all consumers and patrons of said company shall at no time be charged in excess of the present rates for gas and electricity"—such rates being specifically set forth in said section. That said ordinance was accepted by the company and a written contract entered into between the city and the company in compliance with said ordinance and acceptance. That since said time the company had furnished and supplied all lights required by the city under the contract, and had been paid therefor by the city, without objection or complaint, and had continuously supplied and furnished light, power, and heat to all inhabitants of the city desir-

ing the same pursuant to the terms of said contract and ordinance, and in order to meet the requirements of said ordinance and contract and the demands of its patrons had expended in erecting and fitting up its plant many thousands of dollars. That the income or receipts from the city for lights supplied under said contract are not remunerative alone, and the income or receipts from the inhabitants of the city for the light, heat, and power are not remunerative alone; but both together are sufficient to be remunerative and to yield a fair return as an investment. That on November 4, 1908, the city had enacted an ordinance granting to the defendants Davis and Elam, and their associates, the right to erect and maintain a line of poles and wires in, over, and along the streets and alleys of the city, and to furnish and supply light, heat, and power, produced by electricity, to the inhabitants thereof at rates specified in the ordinance and being the same as those specified in the ordinance and contract of complainant, which ordinance had been accepted. by the said Davis, Elam, and associates. That by the ordinance of June 16, 1905, the acceptance thereof, and the contract executed pursuant thereto, a valid contract was made and entered into between the complainant and the city whereby complainant was vested with the sole and exclusive right to furnish and supply the city and its inhabitants with light, heat, and power at the prices fixed therein for the 10-year period covered by the ordinance and contract, and whereby the city contracted and agreed and bound itself not to authorize or permit any other person during such 10-year period to sell, furnish, or supply gas or electric light, power, and heat to the city or any of its inhabitants, and to forbid and prevent the occupancy of its streets for such purpose. That under the laws of Tennessee the city of Murfreesboro was authorized to make and enter into said contract with complainant granting him the exclusive right with which he was vested by said ordinance and contract. That the ordinance of November 4, 1908, authorizing Davis, Elam, and their associates to erect and maintain poles and wires in, over, and along the streets and highways of the city for the purpose of furnishing and supplying electric light, power, and heat to the inhabitants of the city, and also to the city should it desire to take the same, is in violation of the Constitution of Tennessee and of section 10 of article 1 of the Constitution of the United States. That the injury done complainant thereby, and which he will suffer from the competition of the defendant Davis and associates, is great and irreparable, the value of which will amount to more than $2,000 a year during each of the remaining years of his exclusive term.

The complainant prayed that the defendants Davis and Elam be enjoined from erecting and maintaining poles and wires within the corporate limits of the city and from supplying its inhabitants with electric light, heat, and power prior to the expiration of the 10-year term of complainant's contract; that the city be enjoined from suffering or permitting this to be done; that it be adjudged and decreed that under the contract between complainant and the city the complainant is vested with and has the sole and exclusive right to furnish and supply the city and its inhabitants with gas and electric light, heat, and power, and to maintain the plant, wires, and poles necessary and proper therefor until the expiration of said 10-year term; and that the ordinance of November 9, 1908, impairs the obligation of complainant's contract, is in violation of his rights under the Constitution of the United States, and to that extent is null and void.

The defendants demurred to the bill, first, for want of jurisdiction in the court; second, for want of equity on the face of the bill.

John J. Vertrees and Thos. B. Lytle, for complainant.

James D. Richardson, Jr., and Jesse W. Sparks, Jr., for defendants.

SANFORD, District Judge (after stating the facts as above). The bill alleges, in effect: That the complainant acquired by the contract and ordinance of June 16, 1905, the exclusive right, for the period of 10 years, not merely of lighting the streets of the city, but also of furnishing gas and electricity to the city and its inhabitants for light,

heat, and power, with an exclusive right of way in the streets of the city during such period, for such purposes; that the obligation of this contract is impaired by the ordinance of November 9, 1908, granting the defendant Davis and his associates the right to furnish electricity to the inhabitants of the city, for heat, light, and power, and a right of way in the streets of the city for such purpose; and that irreparable injury will result to complainant unless the defendants are enjoined from carrying this last-mentioned ordinance into effect in violation of the contract and exclusive franchise claimed by the complainant.

1. The first ground of demurrer is, in effect, that as all the parties are citizens and residents of Tennessee, and as the bill does not allege that the state of Tennessee has passed any law impairing, or attempting to impair, the obligation of the complainant's alleged contract, no federal question is presented giving this court jurisdiction.

This ground of demurrer must be overruled.

It is well settled that a municipal ordinance, legislative in character, passed in the exercise of delegated authority to make laws which the Legislature might have made, has the force of a state law within the meaning of the contract clause of the Constitution, and that, where such ordinance impairs the obligation of a prior contract made by the city, a suit to enjoin its enforcement involves a federal question arising under the Constitution of the United States, of which the federal courts have jurisdiction, where the requisite amount is involved, without regard to the citizenship of the parties. Hamilton Gaslight Co. v. Hamilton City, 146 U. S. 248, 13 Sup. Ct. 90, 36 L. Ed. 963; City Ry. Co. v. Citizens' Street Railway Co., 166 U. S. 557, 17 Sup. Ct. 653, 41 L. Ed. 1114; Pa. Mut. Life Insurance Co. v. City of Austin, 168 U. S. 685, 18 Sup. Ct. 223, 42 L. Ed. 626; Iron Mountain Railroad Co. v. City of Memphis, 96 Fed. 113, 37 C. C. A. 410; Capital City Gaslight Co. v. Des Moines (C. C.) 72 Fed. 828; Mercantile Trust Co. v. Collins Park Co. (C. C.) 99 Fed. 812; American Waterworks Co. v. Water Co. (C. C.) 115 Fed. 171. And in Walla Walla City v. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed 341, Vicksburg Waterworks Co. v. Vicksburg, 185 U. S. 65, 22 Sup. Ct. 585, 46 L. Ed. 808, and Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102, this principle was applied even where the ordinances sought to be enjoined were not passed by the municipalities in their direct legislative characters, but in their proprietary capacities for the purpose of constructing municipal waterworks. See, also, Water Co. v. Knoxville, 200 U. S. 22, 32, 26 Sup. Ct. 224, 50 L. Ed. 353.

2. The second ground of demurrer is, in effect, that it appears from the allegations of the bill and the exhibits made a part thereof that in so far as the city, in the ordinance under which complainant claims, sought to give the complainant an exclusive right of furnishing the individual inhabitants of the city with gas and electricity, such contract was ultra vires and beyond the power of the city under its charter, and therefore null and void, and that as the ordinance of 1908 purports to grant the defendant Davis and associates only the right to furnish the individual inhabitants of the city with electricity, and in

no wise interferes with complainant's street lighting contract, the bill is without equity on its face.

After careful consideration, I am of opinion that this ground of demurrer is well taken.

I think it fairly clear, and assume for the purposes of this opinion, that it was intended by section 11 of the ordinance of 1905 to give the complainant an exclusive "franchise" for 10 years, not merely for lighting the streets of the city with electricity under his contract, but also for furnishing the city and its inhabitants with gas and electricity for light, heat, and power. I further assume that, in so far as this contract and ordinance purported to give the complainant the exclusive right to furnish street lights during the 10-year contract, it was entirely within the scope of the corporate power—this, in fact, not being denied by the defendants. However, I am of opinion that the city was not authorized, either as a term of the contract which it made with complainant for street lighting, or otherwise, to grant him, in addition, the exclusive right during the period of this contract of furnishing the inhabitants of the city with gas and electricity for light, heat, and power; that to the extent that the ordinance purported to confer such additional right it was ultra vires and void; and that, as the ordinance of 1908 does not purport to give the defendant Davis and his associates the right to do anything more than to use the streets of the city for the purpose of furnishing electricity to the inhabitants of the city for light, heat, and power, and does not conflict in any way with the rights of complainant in the matter of street lighting, it does not impair any contract rights with which he is lawfully vested; and hence that the bill exhibits no ground of relief.

Under section 8 of the city charter, as contained in Acts Tenn. 1903, c. 120, p. 216, the city council was given the authority to license, tax, and regulate water companies and all other businesses and corporations lawful to be carried on within the limits of the city (subsection 6), to have complete control over the streets of the city (subsection 11), and to provide for the erection of lamp posts, lamps, electric fixtures, and lamps for the lighting thereof for strictly municipal purposes (subsection 13); but the right to enter into contracts for municipal purposes was restricted by a provision in section 12 of the charter (page 224) that no order or ordinance should be made involving the expenditure of money or the creation or contraction of a debt against the corporation, unless money should be actually in the city treasury to pay for the same, or the same be within the amount of the current year's taxes for such purposes, as ascertained and reported by the city treasurer.

In 1905, apparently for the specific purpose of doing away with this restriction in the matter of a contract for lighting the streets, the charter was amended so that section 12 of the original charter should thereafter read as follows (Acts Tenn. 1905, c. 41, p. 85):

"Provided, that the provisions of said section 12 shall not apply to any contracts that the city council may hereafter make for the purpose of furnishing lights to light the streets of said city of Murfreesboro, and that the city council shall have the power under this act to make all necessary and proper contracts, with any individual or corporation, for the purpose of lighting said streets

with lights, for any period not longer than ten years, and make appropriations annually, for the purpose of meeting the provisions of any such contract."

Upon the construction of this amendment depends primarily the rights of the parties to this litigation.

It is earnestly insisted in behalf of the complainant that this amendment was intended to enlarge the general power of the council in the making of contracts; that, in giving the city council in express terms the power to make all necessary and proper contracts for lighting the streets of the city for the space of 10 years, there is necessarily involved the power to include in such contract any provision which in the opinion of the city council is necessary and proper for the purpose of obtaining a satisfactory contract for lighting the streets of the city; and that as the city council in 1905 deemed it proper, as part of the consideration furnished the contractor for lighting the streets of the city, to give him also an exclusive franchise for furnishing gas and electricity to the inhabitants of the city during the period of the city contract, such exclusive franchise was authorized under the power given to the city to make all necessary and proper contracts for lighting the streets of the city.

I cannot regard this contention as well taken. I am of opinion that this amendment was not intended to enlarge the power of the city council so as to permit it to give a franchise generally in the streets of the city in reference to any matter distinct from that of street lighting; that its primary purpose was merely to do away with the original limitation upon the power of the city council, by permitting it in this matter to make contracts covering a period of 10 years and involving appropriations forbidden by the original charter limitation; that the power thus given the city council to make all necessary and proper contracts relates directly to the matter of street lighting, the character of the service to be rendered, and the payment to be made therefor, and other incidents of such contract, and does not, either in express terms or by necessary implication, confer the power to incorporate in such contract, under the guise of an additional consideration to the contractor, an exclusive franchise in reference to any separate and distinct matter, such as that of furnishing gas and electricity to the inhabitants of the city, not merely for lighting purposes, but also for heat and power, which is entirely foreign to a street lighting contract; and that the incorporation in the ordinance of 1905 of such an additional, independent, and exclusive franchise, as a term in the contract for street lighting, was beyond both the letter and the spirit of the authority conferred by the amendment.

It is obvious that if the city council, as an incident to its express power to make a contract for lighting the streets of the city, could incorporate as a term of the contract an exclusive franchise for furnishing gas and electricity for heat, light, and power to the inhabitants of the city, because it believed this to be necessary and proper in order to obtain a satisfactory contract for lighting the streets, it could likewise, by parity of reasoning, give, as a part of the consideration, an exclusive franchise for a waterworks or for a street railway system, or incorporate into the contract for street lighting any other

exclusive franchise of a public character which it might deem neces-. sary and proper in order to obtain a satisfactory contract for street lighting. None of such separate franchises, however, in my opinion, are authorized under the power to make necessary and proper con- tracts in reference to street lighting, which must be. limited in its terms, in so far as it is sought to confer rights in the streets of the city, to the direct matter of street lighting, and in which the city council may in its discretion make the direct compensation to be paid large enough in every case to obtain a necessary and proper contract without incorporating as a part of the consideration an independent and unauthorized privilege in reference to an entirely different matter.

It is well settled that a municipal corporation has no general implied power to grant exclusive privileges in the streets of a city; that the power to grant such exclusive privileges does not exist unless it has been given by the Legislature "in language explicit and express, or necessarily to be implied from other powers"; and that, "if inferred from other powers, it is not enough that the authority is convenient to them, but it must be indispensable to them." Citizens' Street Rail- way Co. v. Detroit Railway Co., 171 U. S. 48, 53, 18 Sup. Ct. 732, 43 L. Ed. 67; Freeport Water Co. v. Freeport City, 180 U. S. 587, 598, 21 Sup. Ct. 493, 45 L. Ed. 679; Water, Light & Gas Co. v. City of Hutchinson, 207 U. S. 385, 394, 28 Sup. Ct. 135, 52 L. Ed. 257; Grand Rapids Electric L. & P. Co. v. Grand Rapids E. E. L. & F. G. Co. (C. C.) 33 Fed. 659; Water, Light & Gas Co. v. City of Hutchin- son (C. C.) 144 Fed. 256; Dillon on Municipal Corporations (4th Ed.) § 80; and many other authorities.

In Detroit Citizens' Street Railway Co. v. Detroit Railway, 171 U. S. 48, 18 Sup. Ct. 732, 43 L. Ed. 67, it was held, applying this rule of construction, that a statute providing that no company should be authorized to construct a street railway through the streets of any city without the consent of the municipal authorities and upon such terms and conditions as said authorities might prescribe, it did not, either expressly or by necessary implication, give.the municipal author- ities the power, in prescribing the terms and conditions upon which the streets might be used by a street railway company, to confer an ex- clusive privilege in such use of the streets for the period of the grant.

And in the case of Water, Light & Gas Co. v. City of Hutchinson, it was held, both by the Circuit Court and by the Supreme Court (144 Fed. 256; 207 U. S. 385, 28 Sup. Ct. 135, 52 L. Ed. 257), that a statute authorizing certain towns to make contracts for lighting the streets of the city and to give the contractor the privilege of furnish- ing light for the streets of the city for not exceeding 21 years did not authorize a provision in the contract giving the contractor the ex- clusive right of supplying the city and its inhabitants with light, heat, and power by means of electricity and gas.

I regard this case as identical in all essential respects with the case at bar, and the decision of the Supreme Court as conclusive of the question now at issue. While it is true that in the last paragraph of the opinion it is stated that the conclusion reached is re-enforced by a change which had been made in the state statutes by an amendment

which did away with a former provision expressly authorizing the granting of an exclusive privilege, it is nevertheless true that this is stated, not as the ground of the opinion, but merely as a re-enforcement of the reasoning, and that the opinion itself is primarily and directly based upon the construction of the statute and upon the rule of strict construction of municipal charters, which is directly controlling of the present case; it being further said in this opinion, in answer to the complainant's contention, based upon alleged equities arising from the expenditures which it had made in the construction of its plant upon the faith of the municipal ordinance, that the rule of strict construction of municipal power is "too firm of authority to be disregarded upon the petition of equities, however strong." Page 397 of 207 U. S., page 140 of 28 Sup. Ct. (52 L. Ed. 257).

Furthermore, in Parfitt v. Ferguson, 3 App. Div. 176, 38 N. Y. Supp. 466, where a special statute authorized a board of improvement in the town of New Utrecht to contract with any gas company to supply gas for lighting the city's streets for not exceeding 20 years upon such terms and conditions as the board should deem expedient, the general laws of the state in force at the time authorizing any gas company to lay conductors in the streets of any city with the consent of the municipal authorities, the Supreme Court of New York expressed the opinion, obiter, that a provision in a contract made by the board with a gas company for supplying the town with gas, that during the period of the contract the board would not grant its consent to any other company to lay pipes in the streets, was one beyond the power of the board to enter into.

In the light of the foregoing authorities, and especially in view of the rule of strict construction laid down and applied by the Supreme Court in the Detroit and Hutchinson Cases, without citing many other cases in which the same rule of strict construction has been applied in various cases wherein it had been sought to confer exclusive privileges in the streets of the city, I am unable to reach any other conclusion than that, so far as the ordinance of 1905 went beyond the matter of street lighting and sought to confer upon the complainant an exclusive privilege of furnishing gas and electricity to the inhabitants of the city for heat, light, and power, during the term of the contract, it was beyond the scope of the municipal power, ultra vires, and void.

The authorities relied on in support of complainant's contention appear to me to be clearly distinguishable from the case at bar. Without referring to them all, those principally relied on may be distinguished as follows:

In Omaha Water Co. v. City of Omaha, 147 Fed. 1, 77 C. C. A. 267, 12 L. R. A. (N. S.) 736, in which it was held that a statute, empowering the city of Omaha to contract for the construction and maintenance of "waterworks on such terms and under such regulations as may be agreed on," authorized the city, as one of the terms of an ordinance constituting a contract for the construction of waterworks, to provide for the rates at which the contractor should furnish water to private consumers, there was, in the first place, no attempt to confer any exclusive privilege and no question of this character involved

in the case, while, in the second place, the Nebraska statute did not merely give the city the right to make a contract for supplying water to the city hydrants, but extended broadly to the construction and maintenance of a waterworks system, which necessarily authorized as a term of the contract the rates at which water should be supplied to all users, both public and private. The case would not be at all analogous to the one at bar, even if the question of an exclusive privilege had been involved, unless the Tennessee statute had similarly authorized the city of Murfreesboro to contract for a gas and electric plant, instead of being limited to the matter of street lighting; as it is, they are entirely different.

In Walla Walla City v. Water Co., 172 U. S. 1, 19 Sup. Ct. 77, 43 L. Ed. 341, in which the Washington statute expressly empowered the city of Walla Walla to erect or authorize the erection of waterworks for the purpose of furnishing the city or its inhabitants with sufficient supply of water and to permit the use of the city streets for the purpose of laying the pipes for furnishing such supply for not exceeding 25 years, it was merely held that this provision authorized the city, in a contract granting a water company the right to lay pipes for the period of 25 years, to agree that so long as the contract remained in force the city would not itself construct waterworks. There was, however, in this case no attempt to grant an exclusive franchise and no question of this kind involved, and the statute furthermore expressly empowered the city to authorize the erection of the waterworks for the purpose of supplying not merely the city but the inhabitants also.

And in the cases in the Supreme Court involving the Vicksburg waterworks it was merely held that under a Mississippi statute authorizing the city of Vicksburg to contract for the erection and operation of "a system of waterworks" to supply the city with water, and under the laws of Mississippi as construed by its highest court, the city might lawfully, as a term of the contract for the construction of such waterworks, give the grantee the exclusive right to erect and maintain waterworks for a definite period, during which it could not erect its own system in competition with that of the company (Vicksburg Water Co. v. Vicksburg, 202 U. S. 453, 26 Sup. Ct. 660, 50 L. Ed. 1102), and that it might also as a term of such contract lawfully fix the maximum rate at which water should be supplied to the inhabitants during the period of the contract. · Vicksburg v. Vicksburg Waterworks Co., 206 U. S. 496, 27 Sup. Ct. 762, 51 L. Ed. 1155.

The Walla Walla Case and the two Vicksburg Cases, it is further to be noted, were specifically discussed in the subsequent opinion in Water, Light & Gas Co. v. Hutchinson, 207 U. S. 385, 394, 28 Sup. Ct. 135, 52 L. Ed. 257, and the first two were held to support and the last to be not inconsistent with the holding in that case, that a statute authorizing a town to make contracts for lighting the streets of the city did not authorize a provision in the contract giving the grantee the exclusive right of supplying the city and its inhabitants with light, heat, and power by means of electricity and gas.

179 F.—58

I should add that while it is alleged in the complainant's bill that the ordinance of 1908 authorized Davis and associates to use the streets of the city for the purpose of furnishing light, heat, and power to the inhabitants of the city, "and also to the city should it desire to take the same," I do not find this latter provision in the ordinance itself, which is made part of the bill as exhibit No. 5; the right conferred thereby appearing to be limited to the furnishing of electricity to the inhabitants of the city for these purposes. Sections 1, 2, 3, and 9. As there is, furthermore, no allegation in the bill that the city desires to take any heat, light, and power from Davis and associates, or that any such action is contemplated or threatened, I am of opinion that the allegations of the bill, read in connection with the exhibit, are not sufficient to predicate any relief in reference to this matter upon the mere possibility that this question may hereafter arise, and have therefore not considered the question whether the power given the city to make contracts for its street lighting implies the power, as an incident of such contract, to grant the exclusive privilege of supplying the city itself with gas and electricity, for light, heat, and power, during the period of the contract.

3. Holding therefore that the second ground of the demurrers is well taken, and that the bill should be hence dismissed, this necessarily disposes of the application for the preliminary writ of injunction.

A decree will, accordingly, be entered sustaining the second ground of the demurrers, and dismissing the bill at the cost of the complainant.