CAPITAL CITY GAS CO. v. CITY OF DES MOINES.

(Circuit Court, S. D. Iowa, C. D.)

1. MUNICIPAL ORDINANCES—REVIEW.
   The reasonableness of rates fixed by a municipal ordinance as maximum rates for gas companies is a matter for judicial determination.

2. SAME—EFFECT—LAW OF STATE.
   A municipal ordinance, passed in accordance with statutory requirements, under asserted powers delegated to the municipality and in the direction where such powers might lawfully be delegated, is a "law" of the state within the inhibitions of the federal constitution.

3. SAME—CONSTRUCTION—CONSTITUTIONALITY.

Where a municipal ordinance is attacked as unconstitutional because of alleged unreasonableness of rates fixed therein, the controversy is a constitutional question, and not an ordinary issue of fact, even though the reasonableness of such rates, in the operation and effect of the ordinance, cannot be decided from an inspection of the ordinance itself, but requires for its decision the determination and application of extrinsic facts.

4. FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION.

A bill in equity was filed by a gas company against a municipal corporation of the same state, under whose laws the gas company was organized, alleging that certain prices for gas had been fixed by the municipal corporation, under a state statute authorizing such municipal corporation to regulate the price of gas to be charged by companies operating within its borders; that such prices were not reasonable, and would not afford the gas company a revenue sufficient to pay expenses, fixed charges, and a reasonable profit; and that the ordinance fixing such prices violated the constitution of the United States by impairing the obligation of the contracts of the gas company with the state in its charter, and with the city in an agreement for the use of the streets, by taking the property of the plaintiff without just compensation, depriving it of its property without due process of law, and depriving it of the equal protection of the laws. *Held,* that such bill presented a controversy arising under the constitution of the United States, of which the federal courts had jurisdiction, irrespective of the citizenship of the parties.

Plaintiff is a corporation for pecuniary profit, organized and existing under the statutes of the state of Iowa. The defendant is a municipal corporation organized and existing under said Iowa statutes. Plaintiff seeks to have declared invalid an ordinance passed by the city council of defendant, wherein is fixed, with penalties named for its violation, the maximum price of gas within said city at $1.40 per 1,000 for illuminating purposes and $1.10 for fuel purposes, with a discount of 10 cents per 1,000 on all bills paid by the 15th of the month following; and asks for preliminary writ of injunction restraining the defendant city from enforcing such ordinance pending this suit, and for permanent writ on final hearing. The present hearing is on the application for preliminary writ. The sole question involved in the present demurrer is the jurisdiction of this court.

Cummins & Wright, for plaintiff.
J. K. Macomber, City Sol., and Wm. Conner, for defendant.

WOOLSON, District Judge (orally). The courts of the United States have limited jurisdiction; that is, their jurisdiction extends only where the statute confers it. But when that jurisdiction once attaches, then these courts become courts of general jurisdiction thereunder. The great mass or portion of jurisdiction over controversies resides in the state courts; and properly so, since all powers not delegated by the constitution to the United States reside in the people of the states. Therefore, if jurisdiction is not clearly apparent in the federal courts, or if there arises reasonable doubt as to whether such courts have jurisdiction in any controversy, those courts should not assume jurisdiction. It is very important, at the threshold of this action, that this question of jurisdiction be settled, for in the further progress of the action, in whatever appellate

tribunal the action may be pending, if such tribunal should discover a lack of jurisdiction in the federal court, this action would be dismissed, and thus years of labor, and large expenses, might prove in vain.

By the statutes (commonly termed the "Removal Acts") of 1887 and 1888, the state courts are given concurrent jurisdiction with the federal courts of certain matters therein included. Had plaintiff begun this action in the state court, instead of this court, that court would have had undoubted jurisdiction, and could have proceeded to judgment. The same allegations of fact which are made in bill herein as to violation of provisions of the constitution of the United States could have been there made; and if, in the progress of the litigation, the supreme court of the state had decided adversely to plaintiff's claim,—that is, held the action of the city council valid, and not violative of the federal constitution,—plaintiff could have carried its contention as to this question to the supreme court of the United States for its authoritative, binding decision; and thus, through that channel of litigation, might the final decision have been reached in this controversy, and by the same tribunal wherein such final decision may be reached, if carried on in this court. This consideration makes the action of this court, if adverse to plaintiff on the subject of jurisdiction, not a deprivation of its right to have the controversy heard, but merely compels plaintiff to pursue its remedy through another court. Since, therefore, this action will be hereafter dismissed, if in this court, or in any court to which the action may be carried, it is determined that this court is without jurisdiction herein, and since other courts are open to plaintiff where the jurisdiction is unquestioned, this court ought not to proceed further, but at the very threshold should stop and refuse to act on the merits of the controversy, unless this court is clearly satisfied that it has jurisdiction. All reasonable doubts on this subject must be solved against such jurisdiction. But if this court has jurisdiction, which plaintiff has chosen to invoke, as in such case it might properly do,—for of the two jurisdictions, if both are open to it, it may make its lawful selection,—then this court may not refuse to do its duty. The court must perform that which plaintiff had a right to demand, retain the action, proceed to the consideration of the merits of the controversy and the administration of justice between the parties, as under its view of the law and the evidence which may be submitted it may find the rights of the parties. That its docket is crowded with cases pressing for trial, and the time and strength of the court burdened with actions already submitted for decision, will not justify striking this cause from the calendar. For the purpose of present decision, which is merely as to the jurisdiction of this court, certain facts are conceded. I do not mean that the defendant city has in any manner waived its defense on the merits of the action; but I may not now in any wise consider the merits involved in the action, until first is determined my right to attempt such consideration. If such right does not exist, then I may not hear testimony, nor consider the merits of the controversy. If, however, there is jurisdiction to hear

the case, then all defenses, whether of law or fact, which it may be advised to make, are open to the city.

For the present consideration the following facts are conceded: Plaintiff, a corporation for pecuniary profit, organized under the laws of the state of Iowa, and the defendant city, a municipal corporation organized under the laws of said state, are both citizens of the state of Iowa. Under permission of the defendant city, plaintiff erected its works, and laid its gas mains in the streets of said city, and has been, and now is, distributing and selling its gas product to its consumers, residents of said city. In May, 1895, said city, by its city council, acting under the forms of law, and assuming as its authority therefor a statute of the state of Iowa (contained in the Session Laws of 1888) wherein authority is conferred upon it to "regulate the price of gas," passed an ordinance which fixes the maximum prices which plaintiff might thereafter charge for the gas by it so distributed and sold. Previous to the passage of this ordinance, a contract had been in force between plaintiff and defendant, fixing the maximum rates plaintiff might charge for its gas. But the period by this contract provided for such rates had expired when the ordinance now in question was passed. Plaintiff now claims that the rates fixed by said 1895 ordinance are not reasonable, in that the same will not afford to plaintiff a sufficient amount to enable plaintiff to pay the operating expenses of its plant and its fixed charges, and afford a reasonable compensation to plaintiff for the services by it performed in manufacturing and furnishing such gas; and that, because such rates are not reasonable, under the circumstances, such ordinance is invalid, as being in violation of the constitution of the United States, and should be so declared, and said city be enjoined and restrained from enforcing it. Defendant concedes that, if the parties to this action were of diverse state citizenship, this court would have jurisdiction, but claims such jurisdiction does not exist because both parties are citizens of the state of Iowa. It is, however, conceded that, if the bill presents or tenders a controversy arising under the constitution of the United States, jurisdiction attaches to this court. The question to be now determined is, therefore, does the bill, with its exhibits, present or tender a controversy which arises under such constitution?

The particulars enumerated by plaintiff wherein, as it declares, the enforcement of the ordinance in question will violate constitutional provisions, are: (1) As impairing the obligation of the contract existing between plaintiff and the defendant city and between plaintiff and the state of Iowa, growing out of plaintiff's incorporation under the statute, and of the city ordinance giving the right to plaintiff to lay its mains and supply gas to the residents of said city; (2) as taking property of plaintiff for public use, without making just compensation therefor; (3) as depriving plaintiff of its property without due process of law; and (4) as denying to plaintiff the equal protection of the law. If such ordinance violates any of these constitutional provisions as properly applied to plaintiff and its rights thereunder, such ordinance is invalid, and must be so declared by any court having jurisdiction to hear and determine the

matter. Under the later decisions of the supreme court of the United States, the reasonableness of rates established by statute or by due municipal ordinance, and whether for common carriers or gas companies, is a matter for judicial determination. Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 419, 10 Sup. Ct. 462, 702; Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047; Ames v. Railway Co., 64 Fed. 165. The last case was decided by Justice Brewer; and, unless set aside by the supreme court, furnishes the law for this circuit. The rates fixed in the statute or ordinance are prima facie reasonable. On the party alleging that the rates are not reasonable is cast the burden of proving that fact. But a court of competent jurisdiction is authorized to hear and determine as to whether the rates are reasonable. The court, however, has no power to fix rates. It may not declare what rates would be reasonable, and by its decree establish those rates as the rates to be charged. Its power is exhausted on this point when it has duly passed on the reasonableness of the rates as fixed in the ordinance. If, under the evidence presented, the court should find the rates to be reasonable, the bill of the plaintiff is dismissed, and the ordinance stands as valid. If the finding is that such rates are not reasonable, the ordinance on that point is decreed to be invalid. But the right and power of the city council to fix other and reasonable rates would remain unimpaired, and the council would be free to exercise that power in the passage of a new ordinance. It is claimed the constitutional prohibitions invoked by plaintiff are as to state action, and that the bill presents no action by the state. The fourteenth amendment to the United States constitution provides, "No state shall make or enforce any law, * * * nor deny to any person," etc. The reasoning on this point is substantially this: The state acts through its legislative body. Such body has established no rates for gas. That body did, however, by its statute of 1888, delegate to certain city councils of the state (that of Des Moines being included) the express power to regulate the price of gas within their city limits. But the power to regulate is a power to establish reasonable rates. If the council fix rates which are not reasonable, it is not acting within the power so delegated to it, but has acted beyond and without such delegated power; and, ex necessitate, such action is invalid, because not within the delegated power. Therefore, the argument proceeds, all that is required is to ascertain the reasonableness of the rates; and as that is determined, so is determined whether the council has acted within or beyond the power delegated to it. Thus no federal question under the United States constitution is involved, but the question is simply and only, is the action of the city council within the power thus delegated to it? If the rate is reasonable, yes; if unreasonable, no. This argument has at least plausible force. It deserves close examination.

Another branch of the same general line of reasoning may be here stated. Assuming that whatever action the city council may take as to fixing rates is under the delegated authority conferred by the statute of 1888, above referred to, such regulating or fixing price

for gas under the statute, is only a power to fix reasonable rates. And if a rate is fixed which is not reasonable, then, as this act of the council is not that contemplated or authorized by the statute, it cannot be said that the rate is fixed by the state. The act is not authorized by the state, and so the state has not deprived plaintiff of property, etc. Therefore such fixing of rates is not within the constitutional prohibition relating to action by the state.

The test which shall determine the correctness of this reasoning is not of difficult application. Had the lawmaking power of the state by statute fixed the rates, and such rates were not reasonable, —and by the term "not reasonable" rate as I am herein using it is meant a rate so low as not to afford a proper and reasonable return, under the circumstances, for service performed, including gas furnished,—if the statute rates were not reasonable, manifestly the law might be decreed invalid, under the doctrine so clearly announced by Justice Brewer in Ames v. Railway Co., 64 Fed. 165. The general assembly—as the lawmaking power of the state—might have enacted a statute which by its terms would fix the rates in Des Moines to be charged for gas, and the reasonableness of those rates would be open to judicial investigation. But every statute, by the terms of the state constitution, must be a general law, and be of uniform operation throughout the state. Const. Iowa, art. 3 (Leg. Dep.) § 30. Necessarily, and because of the great variety and large number of differing circumstances which enter into the local situations of the cities in the state, a general statute, fixing the price of gas, could scarcely be so drawn as satisfactorily to adapt itself to each city; and therefore, for convenience of exercise of power to fix rates, as well, perhaps, as to permit the rates to be fixed with greater flexibility, and with more special reference to what local situations might require, the general assembly delegated this power to fix these rates to the several municipal corporations, to be exercised through their respective city councils. That this delegation was a valid exercise of legislative power is conceded by counsel herein. Indeed, if not such valid exercise, it might well be claimed that the defendant city would have no power to pass an ordinance fixing rates for gas. If, then, a statute enacted by the lawmaking department of the state is open to judicial examination as to reasonableness of rates therein fixed, how can it be that an ordinance so passed by a municipal corporation is not at least equally open to like examination? Is it possible that an immunity, a freedom of action, in this respect surrounds the municipal creature which is denied to the legislative creator? Had the general assembly so desired, it might have established a board of gas commissioners, and charged it with the duty of supervising gas companies, and of fixing rates to be charged by such companies for gas furnished, after the general method adopted in establishing the board of railway commissioners in this state. And since the general assembly could not itself, by valid statutes, have fixed other gas rates than such as are reasonable, it could not have conferred on its gas commissioners power to fix other than reasonable rates. Supposing, however, those gas commissioners should fix rates which are not reasonable, can

there be doubt, since the supreme court delivered its decision in
Reagan v. Trust Co., 154 U. S. 362, 14 Sup. Ct. 1047, as to the power
of a court having competent jurisdiction to judicially examine into
and declare that fact and decree such action and rates invalid?
But here, equally as in the case of a municipal corporation, would the
argument apply that the only matter to be determined was the rea-
sonableness of the rates so fixed. If unreasonable, then the commis-
sioners had gone beyond the power delegated to them, and all that
would be required would be to so find, and thereupon, and because
of that fact, declare the rates invalid, etc. Yet such was not the
method pursued in the Reagan Case. There the supreme court pur-
sued their inquiry substantially on the lines adopted by the bill in
the pending action. In the Reagan opinion the supreme court man-
ifestly reason upon the theory that the rates fixed by the commis-
sioners were, according to the provisions of the constitution of the
United States, a "law" of the state, though the commissioners ex-
ceeded the power delegated to them when they fixed the rates which
the court in that case declared to be not reasonable, and therefore
invalid. Thus, also, in the various decisions to which counsel upon
either side have directed the attention of the court in the argument
just completed, the action of commissioners in fixing rates has been
regarded as such action on their part as that the rates, so fixed by
them had had the force of a "law" of the state, within the meaning
of that term as used in the constitutional provisions. The opinion
of the supreme court rendered in Hamilton Gaslight & Coke Co.
v. Hamilton City, 146 U. S. 258, 13 Sup. Ct. 90, justifies the assertion
that the ordinances of a city, when passed in accordance with the
forms of law and under assumed and asserted powers delegated to
it, and in a direction wherein such powers might be delegated, is
the "law" of the state, within the meaning of that term, as used
in the constitutional provisions. While an ordinance, to which the
state has not, by delegation of power to the city, given or attempted
to give the force of law, will not fall within the constitutional pro-
hibitions, yet a municipal ordinance, passed under supposed and as-
serted authority delegated by the state, will be regarded as a "law,"
and is the act of the state within such constitutional inhibitions.
As stated by Judge Cooley (Const. Lim. 198):

"The restrictions imposed by the constitution of the United States, which
directly limit the legislative power of a state, rest equally upon all the instru-
ments of government created by the state. * * * If a state cannot pass an
ex post facto law, or law impairing the obligation of contracts, neither can
any agency do so which acts under the state by delegated authority."

So the supreme court, speaking of a legislative grant of franchise
(Wright v. Nagle, 101 U. S. 791),—and the principle applies equally
in matters of fixing rates,—say:

"The legislature may exercise this authority by direct legislation, or through
agencies duly established, having power for that purpose. The grant, when
made, binds the public, and is, directly or indirectly, the act of the state. The
easement is a legislative grant, whether made directly by the legislature itself
or by any one of its properly constituted instrumentalities."

I have not deemed it necessary, in passing upon the question now
before us, to follow counsel into the interesting field of inquiry as

to whether the power to fix gas rates within a city is one of the "police powers." Some difference of opinion between counsel has appeared in argument as to the proper boundaries of "police powers" as thus applied. For a clear, positive, discriminating discussion of this term, and the extent of its proper application, we may turn to the opinion, written by that eminent jurist, the late Justice Miller, as found in the Slaughterhouse Cases, 16 Wall. 62. This court need not here attempt to decide upon the conflicting views of counsel. This much must be conceded: That if the action, as to which the jurisdiction of this court is to be now decided, presents a controversy in which it becomes material to determine whether the constitutional provisions brought in question do or do not affect the matters herein claimed on the one side and denied on the other to be police powers, then jurisdiction attaches; for it cannot be denied that the question just suggested involves a construction of these constitutional provisions. The determination whether the exercise of such powers, in the manner alleged in the bill herein, is or is not under constitutional prohibition, necessarily involves a construction of the constitution. And if it be granted—as for the present it must be—that the averments in the bill are true, then one construction of the constitution as to the inclusion or exclusion of the exercise of such powers maintains, while the opposite construction defeats, recovery herein. Thus, on this point, is met the test of jurisdiction now to be determined.

Counsel for the city have pressed with elaboration and great force the proposition that when the supreme court of the United States have once decided a question, that question is no longer a "controversy," but must be considered settled; and that this court must and will assume that all courts, state as well as national, will thereafter acknowledge the binding force, under the constitution of the United States, of such decision as "the supreme law of the land," and follow it. And therefore, as to such point, thereafter no such controversy remains as will of itself confer jurisdiction on this court where jurisdiction does not otherwise attach. The decision in Shreveport v. Cole, 129 U. S. 36, 9 Sup. Ct. 210, is cited as conclusively sustaining this proposition; and that, the supreme court having settled the point that rates such as those fixed in the ordinance in question must be reasonable rates, no controversy exists herein as to any constitutional question. Hence this court has no jurisdiction herein in this suit between citizens of the same state. The difficulty here experienced is not with the proposition, but with its proper application to the case now before the court. The experience is not uncommon that opposing counsel agree on a proposition of law, but radically disagree as to its proper application to the facts of a case. If counsel for the city limit the application of this proposition to a case wherein the ordinance or statute once construed by the supreme court is again involved in its application to the same state of facts, the proposition may be accepted as undoubtedly correct. For illustration, we may suppose the supreme court, at the suit of plaintiff herein, to have passed on and settled the questions presented by the bill herein, with regard to

the validity—i. e. constitutionality—of this ordinance of the city of Des Moines. If thereafter are presented, by another gas company (a citizen of the same state with the defendant city), the same general questions of fact and law, under this ordinance, it may be well assumed, if not positively declared, that this court would refuse to entertain jurisdiction; and for the reason that the decision of the supreme court would have placed beyond controversy the constitutional questions tendered in the new action. But if the city council pass a new ordinance, though it be claimed to differ but slightly from the old, we may now have, and probably would have, a new controversy, in which the provisions of the constitution, as settled and applied to the ordinance in question in the former suit, must now be applied to the differing ordinance provisions in the new. Hence, at least on the face of the matter, jurisdiction might attach to this court; for then, as in the former suit, the test is met that one construction of the constitution, in its application to the new facts, would sustain, while the opposite construction would defeat, a recovery. If this reasoning be not correct, how can we account for the historical fact that the supreme court has again and again passed —and without suggestion on part of court or counsel as to jurisdiction being wanting from the cause above stated—on the question as to validity of action by a state or its properly constituted subordinate instrumentalities, in granting new charters or new franchises, where, as was claimed, exclusive grants, then yet operative, had theretofore been granted? But the reports of the supreme and circuit courts of the United States teem with such cases. So, again, as to fixing of rates for common carriers by the state, either directly by its lawmaking body, or indirectly by commission. Again and again, with regard to differing rate charges thus established, the courts of the United States have assumed jurisdiction, and determined the merits as presented in the actions pending before them. I do not overlook the suggestion of counsel that in all these rate-charge cases jurisdiction might have been sustained because of diverse state citizenship. But it must be noted that in all those cases a controversy is recognized as existing; and, if a controversy involving the construction of the constitution of the United States (and that was the theory of the cases), then jurisdiction would have attached equally had the state citizenship not been diverse.

The opinion delivered by Circuit Judge Thayer in Hastings v. Ames, 15 C. C. A. 628, 68 Fed. 726, 728, may assist in the determination of the question here involved. In some respects this opinion has peculiar application to the views so forcibly presented by counsel for the defendant city. From the decrees in Ames v. Railway Co., supra (and associated cases), appeal was taken to the circuit court of appeals for this circuit. The point decided in the opinion rendered in the Hastings' Case was as to the jurisdiction of the circuit court of appeals. And it will be noticed that this opinion deals squarely with the question,—here also presented by counsel for defendant,—that whether the rates complained of and prescribed by the statute are unreasonable and unjust "is not a constitutional question, but an ordinary issue of fact." After synop-

sising the issues, showing that the decrees appealed from were solely on the ground that the statutory rates were unreasonable and unjust within the meaning of the constitutional prohibition, Judge Thayer, in pronouncing the unanimous judgment of the circuit court of appeals, says:

"It is manifest, therefore, that the suits at bar are cases in which it was claimed that a law of a state contravenes the constitution of the United States. The relief prayed for by the plaintiffs was predicated on the express ground that the statute which the appellants were about to enforce was in violation of the federal constitution, and the relief sought was granted by the circuit court on that ground, and for no other reason. * * * In opposition to this view it has been suggested that the question which arises on these appeals is simply whether the rates prescribed by the Nebraska statute are unreasonable and unjust, and that this is not a constitutional question, but an ordinary issue of fact. It is true, no doubt, that the issue is one of fact. But a finding is required upon that issue solely for the purpose of deciding the ultimate question which arises in the several suits,—whether the state statute prescribing the rates is constitutional or otherwise. When the validity of a statute is challenged on the ground that it violates the organic law, it is ordinarily the case that the question can be determined by a simple inspection of the statute; but it may happen, as in the present case, that it can only be determined in the light of extrinsic facts which serve to demonstrate the necessary effect and operation of the statute. Now, it matters not, as we think, how a decision in such cases is to be reached; whether it be by a simple comparison of the statute with those limitations upon legislative power which are imposed by the constitution, or by an investigation and decision of a preliminary issue of fact. If, in a given suit, the ultimate question involved is whether a state statute is void, either because it impairs rights that are guarantied by the federal constitution or because the legislature of a state has assumed to exercise powers that have been surrendered to the general government, then the case is one which does not fall within the appellate jurisdiction of this court,"—citing several cases.

I am not unmindful of the force of the argument that great inconvenience may result to the courts, in the loading of their dockets with cases, under the view I am now presenting. Yet, if such be the result, is not that a minor matter, when compared with the right of a citizen of the United States to have his controversy heard and determined in accordance with law? Is such inconvenience to the court to be accepted as sufficient reason why such court shall decline to entertain and decide the controversy, if such duty is imposed by the constitution and the statutes enacted thereunder? After all, is such inconvenience a serious one? Is it not imaginary, rather than real? For the amount involved must exceed $2,000 before the courts of the United States are open to such controversy. When congress has opened the door of the court to a litigant, may the court bar his entrance because of mere inconvenience or heavy burden to the court?

It may not be improper here to notice the statement of Justice Miller, found in Chicago, M. & St. P. Ry. Co. v. Minnesota, 134 U. S. 419, 10 Sup. Ct. 462, 702, as to the proper method which is to be pursued in matters such as are presented in the bill herein. The question under consideration related to rates which had been fixed by the railway commissioners of the state of Minnesota as maximum rates for the railways within that state. Having remarked that, "until the judiciary has been appealed to to declare the regulation

made, whether by the legislature or the commission, voidable for unreasonableness, the tariff of rates so fixed is the law of the land, and must be submitted to both by the carrier and the parties with whom he deals," Justice Miller outlines the method by which that "appeal to the judiciary" is to be made, as follows:

"The proper, if not the only, mode of judicial relief against the tariff of rates established by the legislature or by its commission is by a bill in chancery, asserting its unreasonable character and its conflict with the constitution of the United States, and asking a decree of the court forbidding the corporation from exacting such fare as excessive, or establishing its rights to collect the fare as being within the limits of just compensation for the service rendered."

The bill in suit appears to have been framed on the line marked out in the extract just given.

In the course of the discussion counsel has submitted, in manuscript, unpublished opinions of Judges Jackson and Phillips, as to questions of jurisdiction in suits pending before them. Such suits appear to have been, in each case, brought by a gas company, a citizen of the same state with the defendant therein, against a city, to enjoin the city from enforcing ordinances fixing gas rates, on the same grounds which plaintiff herein alleges in the pending action. The decision of Circuit Judge (afterwards Justice) Jackson appears to have been orally given in 1881; that of Judge Phillips in 1895. In neither of these opinions is the question as presented in the pending action discussed at length. But both opinions, as applied to the suit at bar, would seem to sustain the jurisdiction of this court. In the brief time permitted since the close of the argument upon yesterday I have again examined the many cases cited by counsel, but find nothing therein which would justify a different conclusion from that herein reached. These cases are many, and have extended over a wide range of discussion. I have not the time at my command for a review of these authorities this morning. Nor do I believe any such special benefit would result from attempting a review of them as to justify the delay in the present hearing, which would necessarily result. The conclusion reached is that the bill in this suit presents a controversy arising under the constitution of the United States, so involving a construction of the constitution as, in my judgment, to clearly give the court jurisdiction herein. The demurrer of defendant as to jurisdiction must be overruled, to which defendant excepts.

If consistent with my views of duty, I would gladly have accepted relief from the labor which necessarily must attend the consideration of this suit. My hands are already filled and my time burdened with other important pressing matters. But I may not consult personal convenience, and am now ready to enter on the consideration of the merits of the pending hearing.