# WATER, LIGHT AND GAS COMPANY OF HUTCHINSON *v.* THE CITY OF HUTCHINSON, KANSAS.

## SAME *v.* SAME.

.APPEALS FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF KANSAS.

Nos. 53, 54.   Argued October 24, 1907.—Decided December 23, 1907.

A grant conferring a privilege is not necessarily a grant making that privilege exclusive.

Grants by the State to municipal corporations, like grants to private corporations, are to be strictly construed, and the power to grant an exclusive privilege must be expressly given, or, if inferred from other powers, must be indispensable, and not merely convenient, to them. *Citizens' Street Railway* v. *Detroit*, 171 U. S. 48.

The Kansas statutes for the government of cities, as construed by the highest court of that State, do not confer on cities of the second class the power to grant exclusive franchises and, in the absence of such power expressly conferred, the exclusive features of an ordinance of such a city granting an exclusive franchise are invalid. *Vicksburg* v. *Waterworks Co.*, 206 U. S. 496, distinguished.

144 Fed. Rep. 256, affirmed.

THE ultimate question in these cases is the validity of Ordinance No. 402 of the city of Hutchinson, which took effect March 17, 1897, and by which the Water, Light and Gas Company claims to have, for the period of twenty years from such date, the exclusive right and privilege of supplying the city and its inhabitants with water, and with light, heat and power by means of electricity and gas.

On the nineteenth of December, 1905, the city enacted and published Ordinance No. 651, granting permits to Emerson Carey and others, their successors and assigns, to construct and operate a street railway in and along the streets of the city, and to construct and operate electric and gas plants for the purposes for which electricity may be used.

These suits were brought to command the city and those claiming under Ordinance No. 651, to "desist from doing any

acts or exercising any pretenses of right to act" under the ordinance which will in anywise affect the exclusive right of the Water, Light and Gas Company "to furnish the city and its inhabitants with electric or gas light for lighting and heating purposes or power, except for street cars and electric railways, and also from making or proceeding to make any contract for furnishing light or gas to said city and its inhabitants" until the expiration of the "franchises and contracts" of that company.

The cases went off on demurrers to the bills. The Circuit Court, assuming that Ordinance No. 402 was exclusive in its terms and was intended to be so by the city, held that the city did not possess the power, either inherent or under the law of its creation, to make a contract binding and exclusive of all others, and entered decrees dismissing the bills. 144 Fed. Rep. 256.

The facts are: In 1885 the city granted to the Holly Manufacturing Company, its successors and assigns, an exclusive right to build and operate waterworks for twenty years. The company erected and operated the works until the subsequent assignment of its rights.

In the same year the city granted to the Interstate Gas Company the right to erect and maintain gas works for the period of twenty-one years; and in 1886 granted to Drake and Orton the right for the period of twenty years to construct and operate an electric light plant. The latter right, and those granted to the two companies, passed by successive assignments, with the knowledge and consent of the city, to the Water, Light and Power Company, and existed in that company at the time of the passage of Ordinance No. 402.

The various companies expended in the aggregate on the construction of their plants and equipment $400,000, to secure which the Hutchinson Water, Light and Power Company executed a mortgage upon all the water, light and gas rights and franchises and properties.

Subsequently, the city became financially embarrassed, so

.that before the year 1897 it had become indebted for hydrant rentals in the sum of $12,800 in excess of its ability to pay.

On account of this default of the city the company became embarrassed and hindered in the payment of interest on its mortgage,. and its mortgage bondholders took possession of its property, and operated the plant during the year 1896 and until the readjustment of its affairs in the spring of 1897, resulting in the passage of Ordinance No. 402.

By reason of its embarrassment the company found it expedient to scale down its bonded indebtedness and secure a new franchise from the city, and in consideration of securing the same, and the readjustment of the contract obligations between the company and the city, the bondholders agreed to reduce and scale down their mortgage indebtedness from $400,000 to $212,500.

On March 5, 1897, at the earnest and repeated solicitation of the city, and in consideration of its inability to discharge its past indebtedness to the company and to pay the current indebtedness thereafter, the company agreed with the city to remit one-half of the indebtedness then due; that is, to scale it down to $6,400, and to reduce the sum thereafter annually payable for hydrant rental from $12,800 to $6,000 for the years of the contract, and to reduce the rental for hydrants thereafter located from $60 to $36, and reduce the number of hydrants from twelve to ten per mile. These concessions and abatements were made on the condition of a renewal and extension of the franchise and contract rights of the company. And the city was to have, what it did not have before, the right to purchase or otherwise acquire the light and gas properties at any time after ten years from the date of the renewal and adjustment. In view of these considerations and in pursuance of them the city passed Ordinance No. 402, to take effect March 17, 1897, and by that ordinance "granted to the company, its successors and assigns, for the period of twenty years from said date the exclusive privilege of supplying the city and its inhabitants with the public utilities of

water, light, heat and power by means of electric current and gas." But it was agreed that the right for furnishing electric current or power should not be exclusive as to or for the operation of street railways, nor exclusive as to any person residing in the city, or any company doing business therein manufacturing gas or electricity for his or its own use for light or fuel. A copy of the ordinance was attached to and made part of the bill. The concessions and abatements would not have been made by the company except for the consideration of the exclusive rights and privileges granted; and the total of the reductions of monetary demands made for what was due and to become due for the period the water franchise had to run amounted to $65,240, which the company remitted from its contract rights and demands against the city. The mortgage bondholders of the Water, Light and Power Company, for the purpose of effectuating the promises and agreements between the company and the city contained in Ordinance No. 402, scaled down their indebtedness from $400,000 to $212,500 and cancelled their mortgage and accepted a substitute mortgage on the property, franchise and contracts and on its income of $212,500.

The Water, Light and Power Company, on the fourth of October, 1902, sold and transferred to the Water, Light and Gas Company, the complainant, all of its property rights and franchise, and complainant has since that date been in possession of the same, and in the fulfillment of the duties and obligations imposed on it by its purchase and said ordinance liabilities with the consent of the city, and the city has ratified and approved the same and contracted and dealt with the complainant as the successor of the Water, Light and Power Company. The Water, Light and Gas Company has since its purchase expended large sums of money in the improvement and enlargement of its properties and the service rendered by it, and has, under the direction and order of the city, extended its water mains and placed hydrants upon such extensions, and, as agreed by it, has reduced the number of hydrants on.

its extended mains from twelve to ten per mile, and generally has complied with the orders and requests of the city, whether or not under the Ordinance No. 402 it was required to comply with such orders, all of which was done in reliance on the obligations of the city and its good faith in carrying out all the terms and conditions and provisions of Ordinance No. 402, but the city, notwithstanding, through its mayor and councilmen, on or about the nineteenth of December, 1905, enacted and published Ordinance No. 651, by which it assumed to grant to Emerson Carey and others the right and privilege for the term of twenty years thereafter of establishing and operating in the city a plant and appliances for the manufacture and sale to the city and its inhabitants of electric light and power and manufactured and natural gas, with the right and privilege to lay and construct gas mains and pipes and erect poles, and wires and all other things necessary to the maintenance of said public service in the streets, alleys and public places of the city in opposition to the business of complainant.

It is alleged that Ordinance No. 402 constitutes a contract between the city and the complainant in respect to all the rights secured, and in particular in respect to the exclusive rights and privileges thereby conferred, and that the city, by and through Ordinance No. 651, illegally and inequitably impairs the same, in violation of the provisions of the Constitution of the United States, which forbids the impairment of the obligation of contracts by the several States of the Union.

Neither the city nor any of the grantees in Ordinance No. 651 have paid or tendered complainant the monetary abatement, or the reductions and concessions paid or secured to the city in consideration of the enactment of Ordinance No. 402, or to secure complainant from loss from the competition of the rival public service association or company. At the time the public service enterprises were undertaken by the grantors of complainant the city of Hutchinson had about 5,000 inhabitants, and at the time complainant succeeded to their rights about 10,000, and at both of said times it would have been

impossible, and is now impossible, to maintain rival or com-
peting companies in the city so as to enable either to earn a
fair and reasonable income on the cost of their respective prop-
erties, and at none of the times when the complainant or its
grantors undertook the work of furnishing said public neces-
sities would it or they have done so without being secured in
the enforcement thereof for a reasonable time against the
competition of rival companies, nor could the large sums of
money have been obtained therefor except under like security.
The company has not up to this time, and will not for many
years to come, have secured the repayment of the purchase
price of said public service and the cost of the betterments,
extensions and improvements.

The company alleges that it does not seek to prevent the
granting by the city of a franchise or contract for the erection
and maintenance of an electric railway in the city or elsewhere.

An injunction was prayed against the doing or exercising
any pretenses of right under Ordinance No. 651 which would
in any way affect the exclusive rights of the company to
furnish electricity and gas for lighting and heating purposes.

*Mr. John F. Dillon* and *Mr. Frank Doster*, with whom *Mr.
Harry Hubbard*, *Mr. Houston Whiteside* and *Mr. Howard S.
Lewis* were on the brief, for appellant:

Statutes delegating to municipalities the police power to
furnish light or to procure it to be furnished are to be liberally
construed to effectuate their object, and are liberally con-
strued in Kansas. *Port Huron* v. *McCall*, 46 Michigan, 565;
*State* v. *City of Topeka*, 68 Kansas, 177, 182; *Andrews* v. *Na-
tional Foundry & Pipe Works*, 61 Fed. Rep. 782.

Under the statutes of Kansas authorizing cities of the
second class " to provide for and regulate the lighting of the
streets, and to make contracts with any person, company or
association for such purpose, and to give such person, com-
pany or association the privilege of furnishing light for the
streets of said city for any length of time not exceeding twenty-

one years," power was given to make an exclusive contract, such as Ordinance No. 402, for a limited and reasonable period to light the streets.    General Statutes of Kansas, 1889, §§ 759, 787, 816, 817, 824, 1401 and 1402; *Manley* v. *Emlen*, 46 Kansas, 655; *Wood* v. *Waterworks Co.*, 33 Kansas, 590, 597; *Waterworks Co.* v. *City of Burlington*, 43 Kansas, 725, 728; *The Columbus Waterworks Co.* v. *The City of Columbus*, 46 Kansas, 666; *The Columbus Waterworks Co.* v. *The City of Columbus*, 48 Kansas, 99; *Vicksburg* v. *Vicksburg Waterworks Co.*, 202 U. S. 453; *City of Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1; *State* v. *City of Topeka*, 68 Kansas, 177; *City of Cleveland* v. *Cleveland City Ry. Co.*, 194 U. S. 517; *Omaha Waterworks Co.* v. *City of Omaha*, 147 Fed. Rep. 1; *California Reduction Co.* v. *Sanitary Reduction Works*, 199 U. S. 306.

Under the general power "to make all contracts and to do all other acts in relation to the property and affairs of the city necessary to the exercise of its corporate or administrative powers," and under the general welfare clauses and cognate provisions of the statutes of Kansas governing cities of the second class, such cities have power to make an exclusive contract for twenty years, such as Ordinance No. 402, subject to police control, to furnish the city and its inhabitants with light.    *Eureka Light & Ice Co.* v. *City of Eureka*, 5 Kans. App. 669, 676; *S. C.*, 48 Pac. Rep. 935; *Cherryvale Water Co.* v. *City of Cherryvale*, 65 Kansas, 219, 228; *Crawfordsville* v. *Braden*, 130 Indiana, 149; *Manley* v. *Emlen*, 46 Kansas, 655; *Wood* v. *Waterworks Co.*, 33 Kansas, 590, 597; *Waterworks Co.* v. *City of Burlington*, 43 Kansas, 725, 728; *The Columbus Waterworks Co.* v. *The City of Columbus*, 46 Kansas, 666; *S. C.*, 48 Kansas, 99; *Ellinwood* v. *Reedsbury*, 91 Wisconsin, 131; *Greenville* v. *Greenville Waterworks Co.*, 125 Alabama, 625; *Grace* v. *Hawkinsville*, 101 Georgia, 553; *Webb City Waterworks Co.* v. *Webb City*, 78 Mo. App. 422; *Aurora Water Co.* v. *Aurora*, 129 Missouri, 540; *Rome* v. *Cabot*, 28 Georgia, 50; *Heilbron* v. *Cuthbert*, 96 Georgia, 312.    See also *City of Newport* v. *Newport Light Co.*, 84 Kentucky, 166.

*Mr. Max Pam, Mr. C. M. Williams* and *Mr. A. C. Malloy,* with whom *Mr. F. F. Prigg* was on the brief, for appellees:

The city of Hutchinson in the State of Kansas, being a city of the second class in said State, had no power to grant an exclusive privilege or franchise to the complainant. *Citizens' Street Ry.* v. *Detroit Railway,* 171 U. S. 48, and cases cited; *Jackson County Horse R. Co.* v. *Interstate Rapid Transit Ry. Co.,* 24 Fed. Rep. 307; *Illinois Trust & Savings Bank* v. *City of Arkansas City,* 22 C. C. A. 179; *Saginaw Gas Light Co.* v. *City of Saginaw,* 28 Fed. Rep. 529; *Vicksburg* v. *Vicksburg Water Co.,* 202 U. S. 453, discussed and distinguished.

Even admitting that under the constitution of Kansas the legislature of the State had power to grant exclusive franchises, yet it did not have the right to delegate such power. See Constitution of Kansas, § 2 of the Bill of Rights; *In re Lowe,* 54 Kansas, 57.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

The Circuit Court assumed that Ordinance No. 402 was in terms exclusive and was intended to be made so by the city. We shall assume the same thing. Indeed, it would be impossible to decide otherwise. It recites that the Hutchinson Water, Light and Power Company "is the owner of certain exclusive franchises and contracts with the city of Hutchinson," under which it has expended large sums of money, and that the city "is desirous of modifying and changing said franchise and contracts to the advantage of said city of Hutchinson, without cancelling or *abridging* any of the *rights* or *privileges* vested in said company," and that, therefore, in consideration of the surrender of all existing contracts and franchises, except as therein specified, "there is hereby given and granted" to the company, "its successors or assigns, the *exclusive rights and privileges* for the term of twenty years from the date of the passage and approval of this ordinance, of

supplying the city of Hutchinson, Reno County, Kansas, and the inhabitants thereof, by a system of waterworks with water ․ . . with electric current for electric light and power, and for all other purposes for which electric current may be used, except power for the operation of street railways. . . ." The city, it is clear, in express terms and for consideration received granted exclusive rights. The power of the city to do this is denied, and this makes the question in the case. The Circuit Court ruled against the existence of the power applying to the statutes conferring power upon the municipalities of the State the rule of strict construction. The ruling is challenged by appellants, and it is contended, that the general welfare clause and "the municipal power to furnish light carries with it the obligation to enter into all contracts and to exercise all subsidiary powers which the circumstances of the case require." And it is further contended that in Kansas statutes delegating to cities the power to furnish light and water have been liberally construed by the Supreme Court of the State.

That grants to municipal corporations, like grants to private corporations, are subject to the rule of strict construction was announced by this court in *Citizens' Street Railway* v. *Detroit Railway*, 171 U. S. 48, following and applying the doctrine of previous cases. It was said that the power to grant an exclusive privilege must be expressly given, or, if inferred from other powers, must be indispensable to them, and that this principle was firmly fixed by authority. See also Dillon on Municipal Corporations, § 80, fourth edition. The case was concerned with a grant to a street railway, and in the argument of the cases at bar a distinction is asserted between an exclusive privilege to occupy the surface of streets and interfere with "a matter of common right," and a privilege to use the streets below the surface "as incidental only and subsidiary to the performance of a contract pertaining to another matter," and on this distinction, it is argued, the "first must show an express grant of authority" to make the right exclusive,

but that the second is not limited by such requirement. The distinction is only one of degree and has not been considered as varying the application of the rule of construction announced. In *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587, a statute of Illinois was considered which gave power to cities and villages to provide for the supply of water at such rates as might be fixed by ordinance and for a period not exceeding thirty years. And passing upon these provisions as constituting a contract precluding a change of rates from time to time, we said (page 598): "The rule which governs interpretation in such cases has often been declared. We expressed it, following many prior decisions, in *Citizens' Street Railway* v. *Detroit Railway*, 171 U. S. 48, to be that the power of a municipal corporation to grant exclusive privileges must be conferred by explicit terms. If inferred from other powers, it is not enough that the power is convenient to other powers; it must be indispensable to them." See also *Rogers Park Water Company* v. *Fergus*, 180 U. S. 624; *Joplin* v. *Light Co.*, 191 U. S. 150, and cases cited; *Owensboro* v. *Owensboro Waterworks Co.*, 191 U. S. 358. The doctrine was recognized as existing in *Walla Walla* v. *Walla Walla Water Co.*, 172 U. S. 1, and in *Vicksburg* v. *Waterworks Co.*, 202 U. S. 453. In the two latter cases the power of the respective cities to make a contract, precluding them from building waterworks and operating their own water systems, was declared. In the *Vicksburg case* it was pointed out that the power of the city to exclude itself from building waterworks of its own was recognized to exist by the Supreme Court of Mississippi.

In *Vicksburg* v. *Vicksburg Waterworks Co.*, 206 U. S. 496, a contract of the city, fixing a maximum rate, was sustained upon the authority of the decisions of the Supreme Court of the State, holding that under a broad grant of power conferring without restriction or limitation upon the city, the right to make a contract for a supply of the water, it was within the right of the city council, in the exercise of that power, to make a binding contract fixing the maximum rate at which the water

should be supplied to the inhabitants of the city for a limited term of years.

This case is especially relied on by appellant as establishing a right in the city of Hutchinson to grant an exclusive franchise under the statutes of the State, both from their letter and as construed by the Supreme Court of the State. A consideration of the statutes and decisions, therefore, becomes necessary. Those quoted by the Circuit Court in its opinion are inserted in the margin.[1] They confer power to provide for the general welfare and enable a city to construct water and lighting plants of its own or "to make contracts with any person or company for such purposes," and give such person or company "the privilege of furnishing light for the streets, lanes or alleys of said city for any length of time not exceeding twenty-one years."

In addition to these sections, appellant cites others, which give to the city the power to make all contracts in relation to its property and affairs necessary to the exercise of its corporate

---

[1] Sec. 35. The mayor and council of each city governed by this act shall have the care, management and control of the city and its finances, and shall have power to enact, ordain, alter or repeal any and all ordinances not repugnant to the constitution and laws of this State, and such as it shall deem expedient for the good government of the city, the preservation of the peace and good order, the suppression of vice and immorality, the benefit of trade and commerce, and the health of the inhabitants thereof, and such other ordinances, rules and regulations as may be necessary to carry such power into effect. General Laws of 1901, § 971, p. 225.

Sec. 65. The council may provide for and regulate the lighting of the streets and the erection of lamp posts, and the numbering of the buildings in the city, and the construction of sewers; and the council shall have power to make contracts with any person, company or association for such purposes, and give such person, company or association the privilege of furnishing light for the streets, lanes or alleys of said city for any length of time not exceeding twenty-one years. General Laws of 1901, § 1000, p. 232.

Sec. 83. That cities of the second class of the State of Kansas are hereby granted full power and authority. on behalf of said cities, to purchase, procure, provide and contract for the construction of and construct waterworks, electric light and gas plants for the purpose of supplying such cities and the inhabitants thereof with water, light and gas for domestic use and any and all other purposes. General Laws of 1901, § 1017, p. 237.

or administrative powers, the power to open and improve streets, purchase or condemn land for hospital and water-works, to make regulations to secure the general health of the city, to enact ordinances for any of the above-mentioned purposes, and "for maintaining the peace, good government and welfare of the city and its trade and commerce." Also a section which gives to gas and water companies the power to manufacture and furnish gas and water and to lay down pipes and mains in the streets "with the consent of the municipal authorities thereof and under such regulations as may be prescribed," and a section giving power to such authorities "to contract with any such corporation for the lighting or supplying with water the streets, lots, lanes, squares and public places in any such city, town or village."

It is from these provisions that the water company deduces the power of the city to make the privileges granted exclusive, and special stress is put upon the provision of § 65, which we have quoted. Counsel say: "Language more explicitly expressing an absolute measure of power could hardly be framed. The power is given to light the streets, to make contracts for the lighting of the streets and to confer the privilege of lighting the streets for a specific term of years." And, further, counsel say: "It will be observed that the grant of power is to confer 'the privilege of furnishing light.' The definite article 'the' is used. Power to confer the privilege implies *ex vi termini*, the exclusive privilege, not a fractional or communal privilege. The privilege conferred exists as a concrete and integral whole, and therefore when conferred must pass in its entirety. The city possessed the privilege of lighting its own streets as a function of its municipal authority. It was that privilege in its integral and exclusive form which the legislature authorized the city to confer." We cannot concur. The kind of privilege is defined, not the extent of it. It is exclusive of some persons, but not of all. It is exclusive of those who have not a grant from proper authority. There are privileges which may exist in their full entirety in more than one person, and the privilege

or franchise or right to supply the inhabitants of a city with light or water is of this kind. A grant of power to confer such privilege is not necessarily a grant of power to make it exclusive. To hold otherwise would impugn the cited cases and their reasoning. It would destroy the rule of strict construction. The foundation of that rule requires the grant of such power to be explicit—explicit in the letter of the grant—or, if inferred from other powers or purposes, to be not only convenient to them, but indispensable to them. And these conditions are imperative—too firm of authority to be disregarded upon the petition of equities, however strong.

It is, however, contended that the statutes of Kansas fulfill the rule by the construction put upon them by the Supreme Court of the State, and the case is therefore brought, it is further contended, within the rule of *Vicksburg* v. *Vicksburg Waterworks Company*, 206 U. S. 496. The Kansas cases relied on are *Eureka Light & Gas Company* v. *City of Eureka*, 5 Kan. App. 669; *State* v. *The City of Topeka*, 68 Kansas, 177; *Cherryvale Water Company* v. *The City of Cherryvale*, 65 Kansas, 219. In those cases the court did say, in determining what duties were imposed or powers conferred upon the city, that the statute should be liberally construed to effectuate the general purpose of the legislature, but the powers under consideration were different from the powers herein involved, otherwise those cases would not be reconcilable with *Payne* v. *Spratley*, 5 Kansas, 525, 545, and *Mining Gas Company* v. *Gas Mining Company*, 55 Kansas, 175, 178. In *Payne* v. *Spratley* the general principles respecting the power of municipal corporations were said to be those which we have expressed. In *Mining Gas Company* v. *Gas Mining Company*, one of the companies, claiming an exclusive right, sought to test the validity of two city ordinances, granting the other the use of the streets and to restrict it from using the privileges granted. For this purpose the court said the plaintiff company clearly had no standing in court, because the city authorities alone were charged with the duty of preventing encroachment on the

streets, and they, alone, could test the validity of the ordinance. The court said further: "The city did not, in terms, attempt to give the plaintiff company a right to the exclusive use of the streets and lanes for the purpose of laying down its pipes. If it had attempted to do so it could not, for want of power."

The conclusion from these cases is reinforced by a change in the statutes conferring power upon the cities of the State. Section 65, *supra*, was § 30 of the statutes of 1868 (subds. 10 and 18, p. 162), and as such gave to a city the power to make the contracts therein expressed, and give "the exclusive privilege of furnishing gas to light the streets, lanes and alleys of said city for any length of time not exceeding twenty-one years." This provision was repeated in § 59 of the statutes of 1872, Kansas Laws, 1892, p. 211. But in 1885 that section was amended, so as to omit the words "the exclusive privilege." Section 7, chapter 99, Statutes of 1885, p. 147. And as thus amended it was reënacted in 1901. Section 1000, General Statutes of 1901.

*Decrees affirmed.*