89 P.3d 841

Teresa D. and David M. PLUMMER, dba
T and M Sanitation, Plaintiffs–
Appellants,

v.

CITY OF FRUITLAND, Fruitland City
Council, Thomas E. Limbaugh, Rick S.
Watkins, and Bert L. Osborn, Counter-
defendants–Respondents.

City of Fruitland, Counterclaimant–
Respondent,

v.

Teresa D. and David M. Plummer, dba T
and M Sanitation, Counterdefendants–
Appellants.

No. 27999.

Supreme Court of Idaho,
Boise, December 2002, Term.

May 2, 2003.
Rehearing Granted July 29, 2003.

Ringert, Clark, Chtd., Boise, for appellants. James G. Reid argued.

Moore, Baskin & Parker, Boise, for respondents. Paige A. Parker argued.

Stoel Rives, LLP, Boise, appearing as amicus curiae for Idaho Sanitary Service Association, Inc.

TROUT, Chief Justice.

The City of Fruitland ("the City") adopted Ordinance No. 388, which provided an exclusive garbage collection and hauling franchise to Hardin Sanitation, Inc. ("Hardin"). The ordinance also provided that it was a misdemeanor for anyone else to engage in garbage hauling services. Teresa and Matt Plummer ("Plummer") operated a competing sanitation business and the City enforced the ordinance by citing and arresting Plummer's employee for collecting and hauling garbage. The ordinance was later repealed. Plummer sued the City, raising antitrust claims and a claim for tortious interference with their business. The district court granted summary judgment for the City, concluding the ordinance was constitutional. Plummer appeals the district court's award of summary judgment in favor of the City. Because the district court erred by concluding the City had the power to grant an exclusive garbage collection franchise and to prevent others from competing with the City, we reverse and remand.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 1999, Plummer began investigating the possibility of moving to the Fruitland area and opening a garbage collection business. After several inquiries made to Fruitland city authorities, Ms. Plummer was informed she would be permitted by law to operate a garbage hauling business in the City. That winter, Plummer bought property near the City and began marketing T & M Sanitation as a service for garbage collection.

In March 2000, Darrell Hardin sought an exclusive garbage collection franchise in the City for Hardin Sanitation, Inc. Hardin had run the only garbage collection business in the City since 1950. Plummer and Hardin attended the March 28 City Council meeting, both arguing for a franchise. The City Council considered draft ordinances that would have granted non-exclusive franchises to both Plummer and Hardin. However, at its April 25 meeting, the City Council rejected without explanation non-exclusive franchises in favor of an exclusive franchise for Hardin. The ordinance prevented any other person from operating a garbage collection business in the City. Ordinance No. 388, which granted Hardin an exclusive ten-year garbage hauling franchise, received its first reading before the Fruitland City Council on July 11. Ordinance No. 388 was adopted on August 22. A summary of the ordinance was published for the first time in the *Independent Enterprise* on August 30, at which time the ordinance went into effect.

On September 19, one of Plummer's employees was collecting garbage when he was cited and arrested for violating Ordinance No. 388. While the City police chief was issuing the citation, City administrator Rick Watkins drove up. The police chief borrowed Watkins's telephone and called City attorney Bert Osborn to ask whether a person could be arrested if the ordinance had not yet been codified. After receiving the go-ahead from Osborn, the police chief arrested Plummer's employee. Following these events, Plummer filed suit requesting that the City be permanently enjoined from enforcing the ordinance.

The district court entered a Temporary Restraining Order, prohibiting the City from enforcing Ordinance No. 388. On October 10, the City Council repealed Ordinance No. 388. A substitute ordinance, No. 392, was introduced on the same day. Ordinance No. 392 also granted an exclusive franchise to Hardin; however, it has not been adopted. In response to Plummer's complaint, the City filed a Motion for Summary Judgment, which was granted. The district court dismissed Plummer's claims and found that Ordinance No. 388 was constitutional. This appeal followed.

## II.

### STANDARD OF REVIEW

When considering a ruling on a motion for summary judgment, this Court's standard of review is the same as that used

by the trial court in ruling on the motion. *Barnes v. Barnes,* 135 Idaho 103, 105, 15 P.3d 816, 818 (2000). We must liberally construe the facts in favor of the non-moving party and determine whether there is a genuine issue as to any material fact, and whether the moving party is entitled to judgment as a matter of law. I.R.C.P. 56(c). In making this determination, all allegations of fact in .the record, and all reasonable inferences from the record are construed in the light most favorable to the party opposing the motion. *Thomson v. City of Lewiston,* 137 Idaho 473, 476, 50 P.3d 488, 491 (2002). The burden of proving the absence of material facts is upon the moving party. *Id.* Once the moving party establishes the absence of a genuine issue, the burden shifts to the non-moving party to show that a genuine issue of material fact on the challenged element of the claim does exist. The nonmoving party may not rest upon the mere allegations or denials contained in the pleadings, but must come forward and produce evidence by affidavits or as otherwise provided in the rules to set forth specific facts showing that there is a genuine issue for trial. I.R.C.P. 56(e). Failure to do so will result in an order granting summary judgment.

### III.

### DISCUSSION

The City offers several reasons why an exclusive franchise for solid waste collection is desirable. Many of its justifications may indeed make good policy sense, but policy decisions are left to the legislature. The City cannot avoid the fact that the relevant statute does not provide for exclusive franchises. Because the City has exceeded its statutory authority, we reverse the district court and conclude that Idaho cities have not been given the authority to monopolize city garbage hauling by granting exclusive franchises for solid waste disposal.

### A. The City Lacks Authority to Monopolize Garbage Hauling Services

The initial question is whether the City was entitled to grant an exclusive solid waste

disposal franchise, and thereby prevent other persons from operating a competing business. A pure review of the ordinance is moot. The City has repealed Ordinance No. 388, the solid waste disposal franchise, and though a similar ordinance has been proposed, it has not been enacted. Thus, there is not a live controversy over whether the City can grant an exclusive franchise; however, several of Plummer's claims arise from the City's adoption and enforcement of Ordinance No. 388. Because the validity of Plummer's claims hinges on the lawfulness of Ordinance No. 388 during the time that ordinance was in effect, we review whether the City had the right to grant an exclusive franchise.[1]

### 1. Municipal Power Under Section 50–344 of the Idaho Code

Plummer first alleges that Idaho law does not grant the City the right to establish exclusive franchises. The City argues that while there exists no express authority to establish exclusive franchises, it may be implied that cities may choose to make their solid waste franchises exclusive and the district court agreed. The text of the relevant statute, however, belies the district court decision.

Idaho Code § 50–344 grants Idaho cities the power to maintain and operate solid waste collection systems. Such maintenance and operation may be performed by several mechanisms, including "[c]ontracts, franchises or otherwise providing maintenance and operation performed by private persons," or "[c]ontracts, franchises or otherwise for maintenance and operation that may provide solid waste collection for all or geographic parts of a city." I.C. § 50–344(1)(b) and (d). This statute does not expressly permit "exclusive" franchises; thus, this Court must examine the implied powers granted to municipalities.

 Municipal power is a classic example of derivative power. It is a longstanding rule in Idaho that cities possess only the

---

1. The use of "exclusive franchise" in this opinion means granting the authority to one entity to

haul garbage in the city and prohibiting any other entity from collecting and hauling garbage.

powers expressly conferred on them by the legislature or which can be derived by necessary implication. *State v. Frederic,* 28 Idaho 709, 715, 155 P. 977, 983 (1916); *see Sandpoint Water & Light Co. v. City of Sandpoint,* 31 Idaho 498, 503, 173 P. 972, 977 (1918) (recognizing that when a city grants a franchise it is not exercising its own powers but is exercising only such powers as have been conferred upon it by the state). This Court has articulated this rule as a strict limitation when construing municipal powers: "municipalities may exercise only those powers granted to them or necessarily implied from the powers granted ... [and i]f there is a fair, reasonable, substantial doubt as to the existence of a power, the doubt must be resolved against the city." *City of Grangeville v. Haskin,* 116 Idaho 535, 538, 777 P.2d 1208, 1211 (1989). This rule is especially applicable to proprietary functions, of which garbage collection services are included.[2] *Id.; see Schmidt v. Village of Kimberly,* 74 Idaho 48, 60, 256 P.2d 515, 517 (1953). Because I.C. § 50–344 does not expressly authorize cities to perform garbage collection by exclusive franchises, to be upheld, the City's actions in this case must be necessarily implied from the statute.

### 2. Necessarily Implied Municipal Powers

■ The district court concluded that the authority to grant exclusive franchises is necessarily implied. The district court limited *City of Grangeville* to its facts, which dealt with whether the city had the authority to enforce a lien ordinance against landlords for their tenants' unpaid utilities. Because the present case questioned the existence of a different municipal power, the district court determined the analysis in *City of Grangeville* did not apply. Instead, the district court turned to *Alpert v. Boise Water Corp.,* 118 Idaho 136, 795 P.2d 298 (1990), and concluded that exclusive solid waste franchising is permitted under Idaho law. In *Alpert,* this Court considered the authority of cities to enter into water and gas franchise agreements. In *Alpert,* we concluded that the cities, not the Ada County Highway District, had the authority to grant franchises to utilities, and the franchise agreements did not violate the state antitrust laws. *Id.* at 141, 144, 795 P.2d at 303, 306. The water and gas franchises in *Alpert* were not exclusive. *Id.* at 138, 795 P.2d at 300. The *Alpert* decision indicated that there was a state policy to permit monopoly public service with respect to several city services, including operating solid waste collection systems. *Id.* at 141, 795 P.2d at 303. Those comments were dicta, however, as *Alpert* dealt strictly with water and gas franchise agreements. The legislature specifically treats water and gas franchises differently from solid waste disposal. *See* I.C. §§ 50–329, –329A (detailing special conditions and treatment for water and gas franchises). In *Alpert,* we were not called upon to decide, and did not decide, whether cities have the authority to grant exclusive solid waste collection franchises.[3]

■ The crux of this analysis is whether the authority to grant exclusive solid waste collection franchises is necessarily implied from I.C. § 50–344. While the *City of Grangeville* case does not hold that cities can provide solid waste services through the use of exclusive franchises, it does provide a test for determining whether or not a city has certain powers. In determining if a city's power is necessarily implied from an express power, all doubts must be resolved against the city. *City of Grangeville,* 116 Idaho at 538, 777 P.2d at 1211. The United States Supreme Court has weighed in on this issue, holding that because a Kansas statute did not

2. "Proprietary functions" refers to the actual act of hauling garbage. Passing laws regulating solid waste collection is a governmental function.

3. Another difference between *Alpert* and this case is that with the water and gas utilities provided in *Alpert,* the city residents are pure consumers. In this case, however, the city residents have a good that has value to parties who are not consumers of the city's utility service. Thus, with water and gas, the value the city provides is the good that goes directly to the city resident. This lends itself more readily to monopoly control by the city. With garbage collection, the value is in the disposal of a good. The City does not own its residents' garbage and, as such, residents should be free to deal with whomever they choose. While the City may monopolize the provider of utilities, the City cannot control city residents' choice regarding disposal of personal property.

expressly provide municipal corporations with the power to grant an exclusive franchise to supply citizens with water, electricity, and gas, such a grant by the municipality was impermissible. *Water, Light & Gas Co. v. City of Hutchinson,* 207 U.S. 385, 397, 28 S.Ct. 135, 52 L.Ed. 257 (1907). A treatise on municipal law provides that if the authority to grant an exclusive franchise is not express but derives from necessary implication, it is not enough that the implied power is "convenient to [express powers], but it must be indispensable to them." McQUILLIN, MUNICIPAL CORPORATIONS § 34.23 (3d ed.1995); *see Hutchinson,* 207 U.S. at 393, 28 S.Ct. 135. Resolution of the issue turns on how indispensable exclusive franchises are to solid waste disposal.

### 3. The City Does Not Have Necessarily Implied Powers to Restrict Garbage Collection to One Entity

 The facts of this case demonstrate that exclusivity is not integral to the provision of garbage hauling services. Hardin had carried on the business of solid waste collection in Fruitland since 1950 without the use of an exclusive franchise, and this case notwithstanding, there has been no exclusive franchise in the City since 1986 when I.C. § 50–344 was enacted. Granted, it may be financially beneficial for a garbage hauling business to be assured by the city that there will be a guaranteed number of customers. However, competition does not necessarily prevent the city from accomplishing its objectives; it just may mean that garbage hauling will subject itself to the effects of capitalism. The Idaho legislature has specifically called a franchise "exclusive" when it so intends. *See, e.g.,* I.C. §§ 31–4002, 50–341(B). Because "fair, reasonable, substantial doubt" as to the existence of a municipality's power must be resolved against the municipality, we conclude that the power to grant an exclusive franchise is not necessarily implied by I.C. § 50–344.[4]

### B. Prohibition on Anticompetitive Conduct

The next issue is whether the City's actions in restricting Plummer's ability to carry on a solid waste collection business constituted anticompetitive conduct prohibited by I.C. §§ 48–104 and –105. The district court granted summary judgment to the City based upon its determination that the City had the authority to grant an exclusive franchise for garbage hauling.

 Because the City impermissibly granted an exclusive franchise, a genuine issue of material fact exists as to whether I.C. §§ 48–104 and –105 have been violated. These statutory provisions prohibit contracts restraining Idaho commerce and forbid monopolies. The record consists of the ordinance granting an exclusive franchise to Hardin and prohibiting all other competition by way of treating such ʹviolations as a misdemeanor. The record also includes letters from the City in which Plummer is told to discontinue business or face citation. This threat to discontinue business is actionable under the Idaho Competition Act. *See* I.C. § 48–113. Therefore, without the legal authority to grant an exclusive franchise, a genuine issue of material fact exists regarding the claim of anticompetitive behavior. We reverse the summary judgment on this issue.

### C. City Failed to Comply With the Competitive Bidding Statute

Plummer contends that even if the City were authorized to grant an exclusive franchise, it was required to follow the competitive bidding practices mandated in I.C. § 50–341. The district court found this claim to be unfounded because I.C. § 50–344(2) exempts solid waste collection from the competitive bidding process. Specifically, this statute provides that "[u]pon a finding by the mayor or city manager for public safety or neces-

---

4. The district court relied on, and the parties argue about, the four-prong test for agency statutory interpretation established by this Court in *J.R. Simplot Co. v. Idaho State Tax Comm'n,* 120 Idaho 849, 862–863, 820 P.2d 1206, 1219–1220 (1991). The deference embraced by this four- prong test is directed at agencies entrusted with the responsibility of administering a statute and the deference is based on agency expertise. The City is not an administrative agency charged with administering the statute for which this statutory deference is intended.

sary protection of public health and welfare and property, the provisions of section 50–341, Idaho Code, shall not apply to solid waste collection, as provided herein." I.C. § 50–344(2). The district court concluded the City made the necessary findings, and accordingly granted summary judgment in favor of the City. The facts refute the district court's conclusion, making summary judgment improper.

■ The City justified avoidance of I.C. § 50–341 based on two sets of findings. Contained in the language of Ordinance No. 388 is the following: "Pursuant to Idaho Code Section 50–344(2), the City of Fruitland, Idaho finds that public safety and necessary protection of public health, welfare, and property necessitate the exception to the competitive bidding procedures outlined in Idaho Code Section 50–341." This "finding" is simply a recitation of the language directly from I.C. § 50–344(2). There are no facts set forth explaining how public safety and public health, welfare, and property are safeguarded by avoidance of the competitive bidding process. Accordingly, there is no basis for a court to assess whether there is indeed a factual basis for avoiding competitive bidding.

The second effort at making the necessary findings came four months after the ordinance's adoption and one month after its August 30, 2000, effective date. In this belated finding, the City Mayor wrote that the reason the competitive bidding practices were not complied with was because "a solid waste hauler needs a long term commitment from its municipal customers so it can obtain financing which is necessary to purchase the amount of equipment and the type of equipment required to best service the citizens of the City of Fruitland." Such after-the-fact rationalization fails to provide the justification required before a city can avoid the competitive bidding requirements. Moreover, it is difficult to see the link between financing the hauler's equipment and the public concerns protected by the exemption in I.C. § 50–344(2). Thus, the district court erred in granting summary judgment to the City on this issue.

**D. Void for Vagueness**

■ Plummer asserts Ordinance No. 388 was void for vagueness. This issue is moot, however, because Ordinance No. 388 has been repealed and no other claims hinge on this question.

**E. Tortious Interference with Prospective Economic Advantage**

■ The remaining two issues deal with whether Plummer can maintain a tort claim for intentional interference with a prospective economic advantage, and whether Idaho Code § 6–904 provides immunity to the City and its employees against Plummer's tort claims. Plummer fails to cite authority or provide argument for the claim that the City tortiously interfered with a prospective economic advantage. Such failure is fatal to this issue on appeal. *See Highland Enterprises, Inc. v. Barker,* 133 Idaho 330, 350, 986 P.2d 996, 1016 (1999) (noting appellate court will not consider issues cited on appeal that are not supported by propositions of law, authority, or argument). A generous reading of Plummer's briefing finds at most an argument that the City acted with ill will in adopting Ordinance No. 388. Such scant argument is insufficient to make out a claim for tortious interference with prospective economic advantage. We decline to consider Plummer's tort claim due to the lack of legal argument and authority. Thus, we also need not consider whether the City is provided immunity from the tort claim.

## IV.

## CONCLUSION

■ Under the existing statutory framework, Idaho cities do not have the power to grant exclusive solid waste disposal franchises that prohibit others from carrying on competing garbage hauling services. Cities do, however, have the authority to regulate for public health and welfare the manner in which garbage hauling is carried out. The district court erred in granting summary judgment to the City on the exclusive franchise, antitrust, and competitive bidding issues. Summary judgment against Plummer was properly entered on the void for vague-

**8**

ness and tort challenges. This case is remanded to the district court for proceedings in accordance with this opinion. We award costs on appeal to Plummer.

Justices WALTERS, KIDWELL and EISMANN concur.

Justice SCHROEDER, Dissenting.

I respectfully dissent from the conclusion of the Court that Idaho Code section 50–344(1) does not authorize cities to provide for exclusive franchises for solid waste collection. Admittedly, subparts (b) and (d) do not specify that the franchises may be exclusive, but read in context it is clear that the legislature intended to confer that power to the cities. This follows from the fact that use of the term "franchises" is surplus language unless it carries with it the meaning that an exclusive right may be granted. The Court notes that in *Alpert v. Boise Water Corp.,* 118 Idaho 136, 141, 795 P.2d 298, 303 (1990), the Court acknowledged that Idaho Code section 50–344 permits monopoly public service for solid waste collection. While that statement was not essential to the decision in the case, it represented a clear statement of interpretation that recognized the meaning of the word "franchises" when surrounded by other language that would render the term pointless if not read to mean an exclusive right. The district court properly relied upon *Alpert* in construing the statute, recognizing that it stated the interpretation of this Court in dealing with a major question of municipal authority left unchanged by the Legislature since the pronouncement in *Alpert.*